**UNITED STATES of America, Appellee,**

v.

**Richard Harmon BELL, Defendant, Appellant.**

**No. 91–1479.**

United States Court of Appeals, First Circuit.

Heard Dec. 3, 1991.

Decided Jan. 2, 1992.

Sarah Jennings Hunt, for defendant, appellant.

Robert J. Veiga, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., was on brief, for U.S.

Before CAMPBELL and TORRUELLA, Circuit Judges, and POLLAK,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

In this sentencing guidelines appeal, defendant Richard Harmon Bell challenges the upward adjustment of his base offense level for obstruction of justice. We vacate the sentence and remand for resentencing.

On August 21, 1990, Bell was scheduled to stand trial on various firearms charges in the district court for the District of New Hampshire. When he failed to appear that day, a bench warrant was issued for his arrest. On August 29, 1990, Bell was indicted for failure to appear, a violation of 18 U.S.C. § 3146(a)(1). Slightly less than two months later, in early October 1990, Bell was arrested by United States Marshals in Newfield, Maine.

Although he was acquitted on the underlying firearms charges, Bell pleaded guilty to failure to appear. The district court set

* Of the Eastern District of Pennsylvania, sitting    by designation.

Bell's base offense level at 6 and his specific offense characteristic at 9. The court also granted a two point downward adjustment for acceptance of responsibility, and a two point upward adjustment for obstruction of justice, making a total offense level of 15. The sole issue in this appeal is whether the district court erred in adjusting upward for obstruction of justice.

The upward adjustment was based upon two sources of evidence. First, Deputy Marshal Robert J. Roberg testified at a sentencing hearing about the circumstances of Bell's arrest. Roberg stated that a group of seven law enforcement officers apprehended Bell and four other people at an auto body shop. When the officers approached the scene, Bell was standing next to a pickup truck with his hands on the hood. The officers shouted "get down, freeze, police," and the four other men immediately dropped to the ground. Bell, however, hesitated several seconds, "survey[ed] the area" and moved his hands "back off the truck" out of Roberg's view before dropping to the ground. A search revealed that Bell had on his person a loaded .357 magnum handgun and extra ammunition. In addition to this testimony, the presentence report stated that Bell had rented a post office box using the alias "Eric McGrath" prior to his arrest. At the time of his arrest, Bell was carrying the key to this post office box.

Based on this evidence, the district court imposed a two point upward adjustment for obstruction of justice. The court explained its reasoning as follows:

> The fact the defendant had a loaded, concealed weapon on his person at the time of his apprehension in Maine and, in addition, had additional ammunition on his person, indicates a clear, willful intent to obstruct his apprehension.
> Additionally, I find that his failure to immediately obey the officer's command to get down at the time of his apprehen-

sion ... also is a factor in the finding that I'm making.

> Finally, I think that the acquisition of the post office box in an assumed name, false name, was done with a willful intention to obstruct in this case.

Although the court did not specify the guideline pursuant to which it imposed the adjustment, the presentence report and the government's sentencing memorandum recommended an obstruction adjustment pursuant to U.S.S.G. § 3C1.1. The government argued that its position was supported by § 3C1.2, a related provision, but stated that that section did not directly apply because it had been enacted after Bell's arrest.

In considering Bell's appeal, we review de novo the question whether the scope of the guidelines encompasses Bell's conduct. *See United States v. Moreno*, 947 F.2d 7, 9 (1st Cir.1991) (discussing § 3C1.1). And in conducting that review, we apply the guidelines in effect on the date of sentencing. *United States v. Cousens*, 942 F.2d 800, 802 n. 1 (1st Cir.1991) (absent ex post facto problem, sentence is reviewed under guidelines in effect at time of sentencing, not commission of offense). Because we are constrained to find that under guidelines in force on April 1, 1991, the date of Bell's sentencing, the conduct relied upon by the court was insufficient for a two point upward adjustment for obstruction of justice, we vacate Bell's sentence and remand for resentencing.

The relevant Sentencing Guidelines contain two provisions dealing with obstruction of justice. Section 3C1.1 provides that

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.[1] This was the only obstruction provision in effect until Novem-

---

1. Application Note 6 to § 3C1.1 provides that where the underlying offense (in this case failure to appear) relates to obstruction of justice, an adjustment should be granted only where a "significant further obstruction occurred during

the investigation or prosecution of the obstruction offense itself." U.S.S.G. § 3C1.1 comment. (n. 6). It appears that the purpose of this Note is to avoid "double counting" by preventing a person from being convicted of a crime and

ber 1, 1990. On November 1, 1990 § 3C1.2 took effect, codifying an adjustment for reckless endangerment *during flight*, which many courts had been imposing under § 3C1.1. *See, e.g., United States v. John*, 935 F.2d 644, 648 (4th Cir.1991); *United States v. Hagan*, 913 F.2d 1278, 1284–85 (7th Cir.1990) (both cases discussing obstruction adjustment for reckless endangerment before adoption of § 3C1.2). That section provides for a two level adjustment where the defendant "recklessly created a risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. In addition, a number of Application Notes were promulgated, clarifying the application of both § 3C1.1 and the new § 3C1.2.

We consider first whether Bell's use of an alias to obtain a post office box constituted an obstruction of justice under the post-November 1, 1990 guidelines. As such conduct does not relate to reckless endangerment, we apply § 3C1.1. The district court concluded that Bell had obtained the post office box with a "willful intention to obstruct," without explaining further. We think this conclusion may be treated as a finding that Bell's purpose in obtaining the post office box was to make it more difficult for the authorities to locate him. However, the November 1990 Application Notes to § 3C1.1 indicate that such conduct does not rise to the level of an obstruction of justice.

Application Note 4(d) by its terms prohibits an upward adjustment for *"avoiding or fleeing from arrest."* U.S.S.G. § 3C1.1 comment. (n.4(d)) (emphasis added). That is exactly what the district court found Bell to have done here, avoiding (or attempting unsuccessfully to avoid) arrest by using a false name on his post office box. Such conduct, while reprehensible, does not warrant an obstruction adjustment under § 3C1.1. *Cf. United States v. Madera*

*Gallegos*, 945 F.2d 264 (9th Cir.1991) (no adjustment where defendant fled his home upon learning arrest was imminent and remained in Mexico for nine months). This conclusion is reinforced by Application Note 3, which sets forth a non-exhaustive list of conduct to which the enhancement applies. That list includes committing perjury, threatening witnesses, providing false information to a judge, and other conduct with a more direct and deleterious effect on the investigation than that at issue here. *See United States v. Wilson*, 904 F.2d 234, 236 (5th Cir.1990) ("Section 3C1.1 is meant to cover cases of destroying or concealing evidence, testifying untruthfully or suborning perjury, threatening witnesses or lying to an officer during the course of an investigation").

Moreover, the Application Notes also deal specifically with the use of false names and the making of false statements. While they do not directly address the use of a false name to attempt to avoid capture, their treatment of other conduct strongly suggests that an upward adjustment may not be based on the use of an alias to elude capture unless the investigation is actually impeded. Application Note 3 sets forth a "non-exhaustive list of the types of conduct to which this enhancement applies" which includes the following:

> (f) providing materially false information to a judge or magistrate;
>
> (g) providing a materially false statement to a law enforcement officer *that significantly obstructed the official investigation or prosecution of the instant offense . . . .*

U.S.S.G. § 3C1.1, comment. (n. 3). In contrast, Note 4 sets forth a nonexhaustive list of conduct which does not warrant enhancement, including

> (a) providing a false name or identification document at arrest, *except where such conduct actually resulted in a sig-*

receiving an adjustment for the same conduct. Here the conduct relied upon by the judge—Bell's hesitation, his carrying of a loaded weapon, and his renting of a post box under an alias—was conduct different from his failure to appear. Whether this conduct would have oth-

erwise amounted to a "significant further obstruction" is an issue we need not address, as we hold that Bell's conduct cannot constitute an obstruction under the new post-November 1, 1990 Application Notes discussed in the text.

*nificant hindrance to the investigation or prosecution of the instant offense.* (b) making false statements, not under oath, to law enforcement officers, unless Application Note 3(g) above applies. . . .

U.S.S.G. § 3C1.1, comment. (n. 4).

Applying these Notes in *United States v. Moreno*, 947 F.2d 7, 9–10 (1st Cir.1991), this court held that an upward adjustment was erroneous where the defendant had done no more than give an alias to law enforcement officers during the investigation. We first found that, as there had been no false statement under oath (Note 4(b)), an adjustment could be imposed only if the defendant's conduct satisfied the requirement of Note 3(g) that there be an effect on the investigation. *Id.* at 10. We then found support for this holding in Note 4(a), which requires an effect on the investigation where the alias is given at arrest. We reasoned that, as proper identification is particularly important at arrest, the defendant's use of a false name during the investigation was less serious than the same conduct at arrest. *Id.* at 10 n. 2. We therefore concluded that an actual obstruction of the investigation would be required for adjustment, and, as there had been no such showing, the adjustment was error.

It follows from *Moreno*'s interpretation of the Application Notes that Bell's conduct in the instant case would not warrant an upward adjustment unless it actually hindered the investigation. Like that of the defendant in *Moreno*, Bell's alias was not given under oath to a law enforcement officer, suggesting that an effect on the investigation would be required by Note 3(g). And, as in *Moreno*, this conclusion is supported by Note 4(a) because Bell's conduct is less serious than providing a false name at arrest. Instead of giving an alias to an arresting officer (Note 4(a)) or even to an investigating officer (*Moreno*), Bell gave a false name to uninvolved postal officials with the hope of eluding capture. Such conduct, while certainly not to be condoned, is obviously less serious than that dealt with under Note 4(a). Therefore, if an adjustment could be based on such conduct at all, a showing that the investigation was impeded would also be required. As there was no showing or even assertion by the government to this effect, Bell's conduct did not warrant an adjustment under § 3C1.1.[2]

█ We turn next to Bell's possession of the loaded firearm and ammunition and his momentary hesitation upon arrest. The district court concluded that Bell's possession of the firearm and ammunition "indicate[d] a clear, willful intent to obstruct his apprehension," and that Bell's momentary hesitation was "another factor" in its finding. The district court did not, however, state exactly how Bell's actions fell within the obstruction provisions of the guidelines. We shall assume the district court meant that Bell's possession of the weapon indicated an intent to use it, if possible, to prevent his apprehension, and that Bell contemplated doing so during the few seconds of his hesitation. But even assuming the available evidence supported such a finding,[3] we conclude that possession of the firearm, intent to use it to obstruct apprehension if possible, and momentary hesi-

---

**2.** It is arguable whether Bell's use of an alias could have provided a basis for enhancement prior to the November 1990 amendments. *Cf. United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir.1990) (before amendments enhancement proper where defendant gave false name to FBI agent but recanted two days later). However, under the November 1990 amendments, it is clear that Bell's conduct did not warrant an adjustment. *See Moreno*, 947 F.2d at 10 n. 3 ("actual, significant hindrance to investigation is necessary when false aliases are given, not under oath, during the investigation" and "[n]o cases decided after the 1990 clarification conflict with [that] holding") (quoting *United States v. Urbanek*, 930 F.2d 1512, 1515 n. 2 (10th Cir. 1991)).

**3.** The only evidence was Deputy Marshal Roberg's testimony that Bell had the loaded firearm on his person at the time of the arrest. Although the district court, as factfinder, may draw all reasonable inferences from the evidence, it is a substantial leap from Roberg's testimony that Bell had a gun and hesitated a moment when arrested to the conclusion that he intended to use the gun to hinder his arrest. That Bell had originally failed to appear on a firearms charge makes it likely that he regularly carried a gun, and perhaps less likely that he obtained a gun for the specific purpose of hindering his arrest.

tation in submitting to arrest, would not warrant an obstruction adjustment under current guidelines.

Although the government and apparently the court assumed that Bell's conduct was governed by § 3C1.1, it is § 3C1.2 which in fact addresses this kind of situation. The Application Notes to § 3C1.1 specifically provide that "avoiding or fleeing from arrest" does not warrant an adjustment under that section. U.S.S.G. § 3C1.1 comment. (n. 4(d)). However, the 1990 amendments added § 3C1.2, which provides for an enhancement where a defendant "recklessly created a risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Application Note 3 to that section states that "this adjustment also is applicable where the conduct occurs in the course of resisting arrest." U.S.S.G. § 3C1.2 comment. (n. 3). As we are to apply the guidelines in effect at the time of sentencing, *United States v. Cousens*, 942 F.2d 800, 802 n. 1 (1st Cir.1991), and as § 3C1.2 is addressed to situations involving the risk of death or harm caused where a defendant resists arrest, we proceed to determine whether Bell's actions warranted an adjustment under 3C1.2.

In enacting § 3C1.2 the Commission created a new guideline which adopted the holding of a number of courts that, under § 3C1.1, mere flight from arrest was not sufficient for an adjustment, but that flight plus endangerment was enough.[4] *See, e.g., United States v. John*, 935 F.2d 644, 648 (4th Cir.1991) (before § 3C1.2 adjustment proper if struggle at arrest endangered officer's safety); *United States v. Hagan*, 913 F.2d 1278, 1284–85 (7th Cir.1990) (before § 3C1.2 no adjustment based on flight

on foot by unarmed defendant, contrasting high speed auto chase creating "almost mortal" situation). We do not think Bell's conduct in this case can be said to rise to the level of that punished by § 3C1.2. Even were it possible to infer that Bell obtained the gun for the purpose of resisting arrest and contemplated its use for a few critical seconds, he did not use the gun. Nor did he make any clear attempt to draw it. Although Bell's conduct came close to the line, something more—reaching for the gun, for example—would be required for a finding that Bell recklessly created a "risk of death or serious bodily injury." Section 3C1.2 punishes the act of creating a risk of death, not merely the intent to create such a risk. Here, Bell's overt conduct fell short, if not by much.[5]

For the reasons stated above the sentence imposed by the district court is vacated and the case is remanded for resentencing.

*So ordered.*

---

**4.** We note that § 3C1.2, by codifying the result reached by a number of courts, clarified, rather than changed, the existing law under the earlier § 3C1.1.

**5.** Section 3C1.1 provides for adjustment based on an attempt to obstruct justice, while § 3C1.2 does not mention an attempt. Assuming, arguendo, that § 3C1.2 could be read as encompassing a situation where a defendant attempts to create a risk of death or serious bodily harm, Bell has not taken the "substantial step" toward

carrying out his intent necessary for a finding of attempt. *See Generally, United States v. Dworken*, 855 F.2d 12, 16 (1st Cir.1988) (in criminal liability—not sentencing—context, attempt occurs when defendant, acting with the necessary mens rea, "purposely ... [does an act] constituting a *substantial step* in a course of conduct planned to culminate in his commission of the crime") (quoting with approval American Law Institute, Model Penal Code § 5.01(1)(c) (1985) (emphasis added)).