**UNITED STATES, Appellee,**

v.

**Babatunde Kareem AGORO, A/K/A Kareem B. Agoro, Defendant, Appellant.**

**No. 92–1834.**

United States Court of Appeals, First Circuit.

Heard Jan. 6, 1993.

Decided June 10, 1993.

David A. Cooper with whom Alton W. Wiley, Jr. and Cooper & Sanchez, Providence, RI, were on brief, for appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Edwin J. Gale, Asst. U.S. Atty., Providence, RI, were on brief, for appellee.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and STAHL, Circuit Judge.

BOUDIN, Circuit Judge.

On February 1, 1991, Babatunde Kareem Agoro was scheduled to appear for sentencing in federal district court following his earlier guilty plea to one count of credit card fraud, in violation of 18 U.S.C. § 1029(a)(2). When he failed to appear on that day, a bench warrant was issued for his arrest. About a year later, in February 1992, he was apprehended in New York, extradited to Rhode Island, and charged with failure to appear for his sentencing on the underlying offense, in violation of 18 U.S.C. § 3146(a)(1). Agoro then pleaded guilty to the failure to appear offense.

On April 13, 1992, Agoro was sentenced by Judge Boyle on the original credit card fraud offense. The court set Agoro's base offense level at 6, as directed by U.S.S.G. § 2F1.1,[1] and made a two-point upward adjustment for obstruction of justice, as directed by U.S.S.G. § 3C1.1. This resulted in a total offense level of 8 and a consequent guideline range of 2 to 8 months. Judge Boyle set Agoro's sentence at 8 months imprisonment and imposed a term of 3 years supervised release following imprisonment. Agoro did not appeal this sentence.

On June 18, 1992, Judge Lagueux, sentenced Agoro for the failure-to-appear offense. In accordance with the guidelines, Judge Lagueux set Agoro's base offense level at 6 and added 6 points based on the maximum length term of imprisonment for the underlying offense. *See* U.S.S.G. § 2J1.6(b)(2)(B). The court also made a two-point upward adjustment for obstruction of justice and denied a two-point downward adjustment for acceptance of responsibility, producing a total offense level of 14. Based on the resulting guideline range of 15 to 21 months, Judge Lagueux set Agoro's sentence at 15 months imprisonment and 3 years supervised release, running consecutively to the terms imposed by Judge Boyle. The

---

1. Unless otherwise specified, guideline citations refer to the 1991 version of the guidelines, the version in effect at the time of sentencing on both

the flight offense and the underlying offense. *See United States v. Gregorio,* 956 F.2d 341, 342 n. 1 (1st Cir.1992).

result was a combined sentence for both offenses of 23 months imprisonment and 6 years supervised release.

Agoro appeals from this sentence, namely, the sentence imposed by Judge Lagueux. He contends that the district court erred in refusing to grant a downward adjustment for acceptance of responsibility, in making the upward adjustment for obstruction of justice, and in failing to follow the guideline "grouping" rules that apply to multiple-count convictions. U.S.S.G. §§ 3D1.1–3D1.5. The grouping rules normally apply where a defendant is convicted and sentenced on multiple counts, but another provision—U.S.S.G. § 5G1.3—sometimes applies those grouping rules to counts imposed in two different cases. In our view, only the last of Agoro's points has merit and we address the grouping issue first.

■ Agoro argues, and the government agrees, that because of the constraint introduced by U.S.S.G. § 5G1.3 and the grouping rules, the sentence imposed by the district court exceeded the permissible guideline range. This issue was not raised in the district court, and it appears that the interaction between these provisions involved went unnoticed by the attorneys and the probation officer. Nevertheless, we will address an "unpreserved legal claim" in order to prevent a "miscarriage of justice." *E.g., United States v. Newman*, 982 F.2d 665, 672 (1st Cir.1992). As both sides agree that the grouping rules limit the maximum term of imprisonment to 21 months, we believe that such review is justified to prevent Agoro from serving a sentence that exceeds the guideline maximum.

■ The reason that the grouping rules apply to Agoro, even though he was sentenced separately for two different crimes, is because he is subject to U.S.S.G. § 5G1.3. That provision applies where, as is true of Agoro, a second sentence is imposed while the defendant is serving a guideline sentence for a prior crime and where the second crime occurred after conviction for the earlier

crime but before the defendant began to serve the earlier sentence. In such a case, section 5G1.3(b) says that the new sentence shall be such as "to result in a combined sentence equal to the total punishment that would have been imposed [for the multiple counts] ... had all the sentences been imposed at the same time."

■ If Agoro had been sentenced for both crimes at the same time, then the two offenses would have been "grouped" under a provision that requires the grouping of "closely related" counts, which are defined to include those where the conduct in one constitutes an "adjustment" to the other. U.S.S.G. § 3D1.2(c).[2] Then, after closely related counts are grouped, the guidelines provide that the total offense level for such closely related counts is the offense level provided for whichever individual count in the group has the highest offense level. U.S.S.G. § 3D1.3(a).

■ In this case, the credit card fraud carried an offense level (after adjustment) of 8, while the failure to appear offense—including the adjustment for furnishing false information to the probation officer—carried an offense level of 14. The latter, being the greater of the two, fixed the offense level for the "group." If Agoro had been sentenced on both counts at the same time, the maximum sentence for offense level 14 (given Agoro's criminal history category) would have been 21 months. Under U.S.S.G. § 5G1.3(b), this remains the maximum sentence for the two offenses despite the separate sentencing. Judge Boyle having already imposed an 8 month sentence, Judge Lagueux could permissibly add only 13 more months.

Since Judge Lagueux actually imposed a 15 month sentence, the matter must be remanded for re-sentencing. *Accord United States v. Lacey*, 969 F.2d 926 (10th Cir.1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993) (requiring re-sentencing in similar circumstances). On re-sentencing, the district court is free to

---

**2.** Here, the failure to appear constituted an adjustment (for obstruction of justice) to the credit card fraud. U.S.S.G. § 3C1.1. *See* U.S.S.G. §§ 2J1.6, comment note 3; 3C1.1, comment note 6.

select the maximum of 13 months or any lesser amount permitted by the guidelines; but in accordance with the statute the further sentence must be consecutive. 18 U.S.C. § 3146. To simplify matters on remand, we deal below with Agoro's two other claims on appeal, finding them to be without merit.

The more serious of the two is Agoro's objection to the two-point upward adjustment imposed by the district court for obstruction of justice. This is not, of course, the obstruction (of the credit card prosecution) represented by the flight itself, an obstruction that is already taken into account in Judge Boyle's sentence. Rather, the district court found that Agoro had engaged in a further obstruction, incident to his second prosecution, by seeking to deceive the probation officer as to the cause of his flight. U.S.S.G. § 3C1.1 provides for a two-level increase in the offense level

> [i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense. . . .

■ Comment 3(h) gives as an illustration of such an obstruction "providing materially false information to a probation officer in respect to a presentence ... investigation. . . ." To be material, a falsehood need not affect the guideline computations; it is enough if the falsehood is designed to mitigate significantly the wrongful conduct and so affect the court's exercise of discretion in choosing a sentence within the range. *See United States v. Dedeker*, 961 F.2d 164 (11th Cir.1992) (false information regarding criminal history).

■ Agoro contends that he did not make a false statement, that the information was not in any event material, and that the district court did not identify the falsehood or expressly find it to be material or willful. Only the first point has any bite. In substance, Agoro wrote a statement for the probation officer that asserted the following: in December 1990, with sentencing in the credit card case slated for February 1991, Agoro's wife became ill, was examined in the hospital, and was told that her life was threatened by

a paralyzing disease of unknown origin. In response she returned to Nigeria in January 1991 for spiritual healing and returned six months later at least temporarily cured. Agoro's statement says that he was "traumatized and engulfed" by this episode.

The statement does not explicitly say that this alleged sequence of events was the cause of Agoro's flight to New York where he remained until extradited in 1992, but it is clearly intended to convey that impression. In sum, the alleged trauma was offered in extenuation of Agoro's failure to appear. The information provided by Agoro is plainly material in relation to sentencing, for it could easily affect the court's choice of a sentence within the guideline range. *See* U.S.S.G. § 3C1.1 comment note 5 (information "material" where, if believed, it "would tend to influence or affect" the issue); *United States v. St. Cyr*, 977 F.2d 698 (1st Cir.1992).

■ Whether, and in what respect, the statement was false are closer questions. But we review district court findings only for clear error, *United States v. Connell*, 960 F.2d 191, 197 (1st Cir.1992), and in sentencing the court has wide latitude in the procedures used to ascertain the facts. In this instance, the court was furnished a bundle of travel documents and medical reports for Agoro's wife, and the court concluded that Agoro's story was mostly untrue. In particular, the court noted that the medical report indicated a viral infection—not an unknown life threatening disease—and that nothing in his story explained why Agoro continued to remain in New York for more than six months after his wife returned from Nigeria in mid–1991 following her cure.

■ The probation officer's report pointed out that in two prior interviews Agoro had not even mentioned his wife's illness, instead claiming "fear" as the reason for failing to appear. His wife, separately interviewed by a different probation officer, also made no mention of the illness. The medical records which Agoro finally furnished do not assert that his wife's life was threatened, that she was paralyzed, or that the affliction was unknown; rather, they specify various conditions, but do not appear to suggest any spe-

cial reason for alarm. The probation report mentions two other criminal episodes, one a conviction and the other a pending case, suggesting dishonesty on Agoro's part.

It is evident that the district court agreed with the government that Agoro had overstated the threat to his wife and falsely offered it as the explanation for his failure to appear. The facts already stated provide some support for this inference and it is one that the district judge, in the context of sentencing, is in the best position to weigh. At sentencing Agoro himself did not add to or bolster his prior written statement. We think that, given the deferential standard of review, the district court had an adequate basis for concluding that Agoro's statement comprised willful falsehood.

With admirable candor, which we commend, government counsel has called to our attention a quite different concern with the same adjustment. The final note to the obstruction guideline commentary expressly refers to a set of offenses, including failure of a defendant to appear, and says that the obstruction enhancement is not to be applied to such offenses "except where a significant further obstruction occurred *during the investigation or prosecution of the obstruction offense itself....*" U.S.S.G. § 3C1.1 comment note 6 (emphasis added). The obvious purpose of this comment is to prevent double-counting but the government notes that the underscored phrase does not mention "sentencing."

In this case there was a significant further obstruction and no risk of double counting exists. That obstruction is captured by the language of the guideline itself, which speaks of willful attempts to obstruct during "the investigation, prosecution, or sentencing" of the offense. U.S.S.G. § 3C1.1. But the question remains whether the "investigation or prosecution" phrase in comment note 6 is meant to narrow the category of "further obstructions" to exclude those that occur in connection with sentencing for the offense.

We agree with the government that no such narrowing is intended.

Believing the commentary to be part and parcel of the guidelines, we have accorded great weight to the application notes, *see United States v. Elwell,* 984 F.2d 1289, 1295 (1st Cir.1993), even before the Supreme Court endorsed this approach to commentary in *Stinson v. United States,* — U.S. —, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Indeed, in *Elwell* we did so, despite the counter-intuitive result, because we were persuaded that the result was intended by the Sentencing Commission. Here, by contrast, the guideline itself does cover obstructions in sentencing, and the omission of the word "sentencing" in comment note 6 appears to be inadvertent.

The history of U.S.S.G. § 3C1.1 hints at an explanation. The prior version of the guideline text provided the upward adjustment for obstructing "the investigation or prosecution" of the offense, U.S.S.G. § 3C1.1 (1989); the word "sentencing" was omitted from the guideline, but the commentary made clear that "investigation" included presentence investigations.[3] When in 1990 the guideline was "clarif[ied]," *see* Amendment 347 (reprinted in U.S.S.G. App. C (1990)), the word "sentencing" was added to the phrase "investigation or prosecution" in the text of the guideline, but the parallel language in application note 6 was not similarly corrected. Not only does this history suggest inadvertency, but it makes clear that the term "investigation" in the text and in application note 6 *always* embraced presentence investigations anyway.

As the government points out, a contrary reading would leave a defendant free to lie outright to a probation officer (or to the court at a sentencing hearing) without fear of the two-point adjustment that would apply for sentencing of almost any other crime. No rationale for such an outcome is apparent and no precedent supports it. Thus, we follow the explicit language of the guideline, treat the omission of the word "sentencing"

---

3. The commentary provided examples of conduct that "may provide a basis for applying this adjustment," including as example 1(e) "furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court." U.S.S.G. § 3C1.1, comment note 1(e) (1989).

in comment note 6 as irrelevant, and sustain the two-point upward adjustment in this case.

Agoro also argues that the district court erred in denying him a two-point downward adjustment for acceptance of responsibility. The district court is especially well placed to decide whether a sincere and adequate repentance has been shown, and an adjustment is not assured by the mere "mouthing [of] platitudes." *United States v. Royer,* 895 F.2d 28, 29–30 (1st Cir.1990). Here Agoro's distortion of the events incident to his wife's illness provided an ample foundation for doubting his sincerity and denying him the adjustment.

Finally, Agoro has filed with us a motion for release, arguing that it is likely that his sentence will ultimately be reduced to a level that he has already served. We have no reason to believe this is so, since a reduction of the sentence by two months would leave Agoro confined, according to his own motion, for another six months or so. The motion for release is *denied* without prejudice to any similar motion that Agoro may make in the district court in connection with his re-sentencing. The sentence is *vacated* and the case *remanded* for re-sentencing in accordance with this opinion.

*It is so ordered.*