**UNITED STATES of America, Appellee,**

v.

**Zachary S. FREDETTE and Gordon M. Ritchie, Defendants–Appellants.**

**Nos. 508, 934.**

**Dockets 93–1324, 93–1455.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1993.

Decided Feb. 2, 1994.

William B. Darrow, Asst. U.S. Atty., Charles Tetzlaff, U.S. Atty., David V. Kirby, Criminal Div. Chief, D.Vt., Burlington, VT, for appellee.

Thomas A. Zonay, Carroll, George & Pratt, Woodstock, VT, for defendant-appellant Fredette and

Kevin P. Candon, Rutland, VT, for defendant-appellant Ritchie.

Before MAHONEY, WALKER, Circuit Judges, and EGINTON,* District Judge.

EGINTON, Senior District Judge:

Defendants, Zachary Fredette and Gordon Ritchie, appeal from judgments of conviction entered in the United States District Court for the District of Vermont following their respective guilty pleas before Billings, J., for conspiring to retaliate against a witness and retaliating against a witness in violation of 18 U.S.C. §§ 371 and 1513(a)(2). On appeal, defendants claim that the district court's sen-

---

* The Honorable Warren W. Eginton, Senior Judge of the United States District Court for the District of Connecticut, sitting by designation.

tences were improper. Because the defendants' claims lack merit, we affirm.

## I. BACKGROUND

The following facts are pertinent to this appeal. In 1991 the government launched an investigation of the Ritchie family. Gary McCormick cooperated with the investigating authorities by introducing an undercover officer to Richard Ritchie, nephew of defendant Gordon Ritchie. Richard Ritchie then sold stolen firearms to the undercover officer. In March, 1992, a federal grand jury indicted Richard Ritchie for violating federal firearms laws. Two days after the indictment was returned against Richard Ritchie, defendants, Zachary Fredette and Gordon Ritchie, beat and injured McCormick as a retaliatory measure for the role he had played in the investigation and indictment of Richard Ritchie.

Defendant Ritchie and his brother James Ritchie were detained on charges of retaliating against a witness. (The government later dropped the charge against James Ritchie). At Ritchie's request, Fredette dictated a two-page statement under oath to James Ritchie's attorney. In this affidavit Fredette claimed that defendant Ritchie was not involved in the beating. According to the affidavit, McCormick provoked Fredette and Fredette beat him in response. At a subsequent grand jury hearing, defendant Fredette confessed that his affidavit was false, but testified that it was his own idea to lie. Ultimately defendants pleaded guilty to conspiracy to retaliate against a federal witness and retaliation against a federal witness.

The district court sentenced defendants under the "obstruction of justice" guideline, U.S.S.G. § 2J1.2, which prescribes a base offense level of twelve, and imposed an increase of eight levels pursuant to § 2J1.2(b)(1) because the offense involved physical injury to a person. The court then imposed an additional two-level enhancement pursuant to U.S.S.G. § 3C1.1 because Fredette and Ritchie had attempted to obstruct justice by furnishing the false affidavit. The court then applied Guidelines commentary that:

[c]onduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 [acceptance of responsibility] may apply.

§ 3E1.1, Application Note 4. Stating that Fredette had "acknowledged his false affidavit in a timely fashion, entered a timely guilty plea and cooperated with the probation officer," the court concluded that Fredette's acceptance of responsibility was extraordinary and awarded him a three-level reduction pursuant to § 3E1.1. Fredette's total offense level of nineteen combined with his criminal history category of VI to yield a sentence range of 63 to 78 months. The court sentenced him to 66 months incarceration.

The court declined to award Ritchie an adjustment under § 3E1.1, finding that his conduct did not reflect extraordinary acceptance of responsibility. The court then concluded that Ritchie had at least two prior felony convictions for crimes of violence and therefore classified him as a career offender, resulting in a substituted offense level of 24. *See* U.S.S.G. § 4B1.1. The court based this conclusion upon Ritchie's prior state conviction for assault and robbery and three prior convictions for breaking and entering in the nighttime, arising from Ritchie's participation in burglaries of three summer camps in October, 1976. The offense level of 24 combined with the attendant criminal history category of VI, *see* § 4B1.1, to yield a range of 100 to 125 months incarceration. The court sentenced Ritchie to 100 months imprisonment.

## II. DISCUSSION

On appeal the defendants contend that the trial court improperly assessed a two-level sentencing enhancement for obstruction of justice. In addition, defendant Ritchie claims that the district court improperly found (1) that Ritchie was not entitled to a sentence reduction for acceptance of responsibility and (2) that Ritchie's prior convictions for burglary were crimes of violence pursu-

ant to the career offender provision of the sentencing guidelines.

## A. *Further Obstruction of Justice*

Defendants Fredette and Ritchie first claim that the district court improperly assessed a two-level sentencing enhancement for obstruction of justice. At Fredette's sentencing hearing the sole issue was whether under U.S.S.G. § 3C1.1 the district court could apply a two-level enhancement to his base offense level to account for "significant further obstruction." The court applied the enhancement, relying on the fact that Fredette had sworn under oath by affidavit and testimony to a false statement. At Ritchie's sentencing hearing the court again grappled with the obstruction of justice enhancement. At issue was whether Ritchie had asked Fredette to prepare the false affidavit and if so, whether Ritchie's actions triggered an obstruction of justice enhancement. After the government offered testimony establishing that Ritchie had solicited Fredette to provide the false affidavit, the court applied the § 3C1.1 enhancement.

While the facts pertaining to each defendant are distinct, the legal issue before the court is the same: When a defendant is convicted of an obstruction-related offense what do the sentencing guidelines require before a district court can apply a § 3C1.1 enhancement for obstruction of justice?

A two-level enhancement is warranted under U.S.S.G. § 3C1.1 if "the defendant willfully obstructed or impeded, or *attempted* to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." (emphasis added). Application Note 6 provides that the enhancement does not apply to an obstruction-related offense "except where a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself." Defendants argue that this language requires a finding that before there can be an enhancement for obstruction of justice based on additional obstructive acts, the additional acts must *actually* have the intended *effect* of obstructing the investigative and prosecutorial process.

Case law addressing Application Note 6 of § 3C1.1 is scant. However, it is clear that the Sentencing Commission designed this provision to eliminate the possibility that a defendant could be convicted and sentenced for an obstruction-related offense and then be subject to an enhancement for the *same* base offense, a situation referred to as "double counting." *United States v. Agoro,* 996 F.2d 1288, 1293 (1st Cir.1993); *United States v. Bell,* 953 F.2d 6, 7 n. 1 (1st Cir.1992).

In the present case there is no danger of double counting. Although the offense of conviction at issue is undoubtedly obstruction-related, defendants acted in an effort to further obstruct the investigation and prosecution of their respective cases. After committing the obstruction-related offense of beating McCormick, defendants concocted a false affidavit stating that Fredette was solely responsible and had been provoked. Because the defendants acted to *further* obstruct justice, there is no risk of double counting under the circumstances.

The issue therefore evolves to whether a significant *attempt* to further obstruct justice constitutes a "significant further obstruction" under Application Note 6. "Obstruction" as used in Application Note 6 "is captured by the language of the guideline itself, which speaks of willful *attempts* to obstruct." *Agoro,* 996 F.2d at 1293 (emphasis added); *cf. United States v. Stevenson,* 6 F.3d 1262, 1269 (7th Cir.1993) (involving obstructive conduct; holding, without mention of Application Note 6, that "no finding of actual prejudice to the government is required."). This interpretation fosters the essential purpose of Application Note 6, namely the need to avoid double counting. It also squares the language of Application Note 6 with the express language of § 3C1.1 which targets attempts at obstruction whether or not they are successful.

There is nothing in Application Note 6 that even hints of the need to differentiate between obstruction-related offenses and other offenses, unless there is a threat of double counting. In fact, Application Note 6 provides an example that clearly covers significant attempts to further obstruct justice. According to Application Note 6, an enhance-

ment is appropriate where, for example, "the defendant threatened a witness during the course of the prosecution for the obstruction offense." Under this scenario, it is conceivable that a witness would testify truthfully despite being threatened by the defendant. If the witness does testify truthfully, the defendant will have attempted to obstruct justice but failed to do so. The example in Application Note 6 buttresses our conclusion that, irrespective of whether the base offense is obstruction-related, § 3C1.1 applies to significant *attempts* to further obstruct justice.

Defendants propose an analogy between Application Note 4 and Application Note 6. They argue that because the application notes are similar, interpretations of Application Note 4 are equally applicable to the instant case. For example, the defendants rely on *United States v. Williams*, 952 F.2d 1504, 1516 (6th Cir.1991), where the court held that under Application Note 4(b) a false statement not made under oath must have "*succeeded* in significantly impeding the investigation."

The basic flaw in defendants' argument is that there are no pertinent similarities between Application Note 4 and Application Note 6. For that reason it makes little sense to impart interpretations of Note 4 to the present circumstances. "Application Note 4 sets forth examples of *less serious* forms of conduct to which [an obstruction] enhancement is not intended to apply." U.S.S.G. § 3C1.1, Application Note 2 (emphasis added). Because these forms of conduct are "less serious" it is understandable that courts have held that to warrant enhancement a defendant must have successfully obstructed justice. *See, e.g., Williams*, 952 F.2d at 1516.

In addition, the two provisions of Note 4 upon which defendants rely contain language expressly requiring that defendant's obstructive act actually hinder the government's investigation or prosecution. Subdivision (a) of Note 4 states that providing a false name or identification document upon arrest will not ordinarily warrant an obstruction of justice enhancement "except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, Application Note

4(a). Subdivision (b) similarly provides that making false statements, not under oath, to law enforcement officers will not subject a defendant to an obstruction of justice enhancement unless the statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* Application Note 4(b).

Application Note 6 does not contain language requiring an actual successful effect. Its text simply refers to cases where a "significant further obstruction occur[s]." The Note does not specify that the obstructive act must "actually result[ ] in a significant hindrance" or that the act must "significantly obstruct[ ] or impede[ ] the official investigation or prosecution." Moreover, Note 6 does not address the type of less serious obstructive conduct addressed by Note 4. The purpose of Note 6 is to prohibit double counting when the base offense level at issue is obstruction related. However, Note 6 permits an obstruction enhancement where a more serious obstructive act, such as threatening a witness, occurs. Because of the difference in subject matter and language between Application Notes 4 and 6, defendants' reliance on cases interpreting Note 4 is misplaced.

■ We conclude that Application Note 6 applies to cases in which a defendant attempts to further obstruct justice, provided that the obstructive conduct is significant and there is no risk of double counting. Regardless of whether the defendants in this case were successful in their efforts to obstruct justice, the fact remains that they used a false affidavit in an effort to derail the investigation and prosecution of their respective cases. The mere fact that this case involves an obstruction-related offense should not shield the defendants from the clear language of § 3C1.1, particularly since there is no threat of double counting.

## B. *Acceptance of Responsibility*

Defendant Ritchie also contends that the district court improperly refused to grant a sentence reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. This claim is without merit.

■ Pursuant to § 3E1.1 a district court may decrease the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." A defendant who pleads guilty is not automatically entitled to an adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1, Application Note 3. Further, a reviewing court will not disturb a district court's factual findings under § 3E1.1 unless they are without foundation. *United States v. Irabor*, 894 F.2d 554, 557 (2d Cir.1990).

■ In this case the district court properly refused to make a downward adjustment for acceptance of responsibility. The fact that defendant attempted to or succeeded in further obstructing the investigation and prosecution of his case indicates that he did not accept responsibility for his offense. U.S.S.G. § 3E1.1, Application Note 4; *Irabor*, 894 F.2d at 557. The district court's decision not to depart downward for acceptance of responsibility was not without foundation.

## C.  Career Offender Status

■ Defendant Ritchie's final claim on appeal is that his prior convictions for burglary were not "crimes of violence" under U.S.S.G. § 4B1.1. According to defendant, the district court improperly considered these convictions in concluding that he was a career offender.

Pursuant to U.S.S.G. § 4B1.1, "[a] defendant is a career offender if ... the instant offense of conviction is a felony that is ... a crime of violence ... and ... the defendant has at least two prior felony convictions of ... a crime of violence." In the present case the district court applied § 4B1.1 on the basis of defendant's prior convictions for (1) assault and robbery and (2) burglary. Defendant does not dispute that his prior conviction for assault and robbery is a crime of violence. The remaining issue, which defendant Ritchie does dispute, is whether his convictions for burglary are violent crimes for purposes of the career offender provision.

■ Section 4B1.2(1) defines "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that ... is burglary of a dwelling." Burglary of a dwelling is an inherently violent crime for purposes of the career offender provision. *United States v. Telesco*, 962 F.2d 165, 166 (2d Cir.1992); *cf. Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990); When a crime is designated a crime of violence under § 4B1.2 the district court must accept the designation without scrutinizing the conduct underlying the prior conviction. *Telesco*, 962 F.2d at 166.

In the present case defendant's prior burglary convictions involved dwellings. These convictions clearly fall within the aegis of "crime of violence." Under the Guidelines the district court was not permitted to assess the conduct underlying the convictions. Defendant's criminal history, including the convictions for burglary of a dwelling, warranted career offender status. U.S.S.G. § 4B1.1.

Defendant notes that Vt.Stat. tit. 13, § 1201 (burglary in the nighttime) covers burglaries other than the burglary of a dwelling, i.e., burglaries involving courthouses, schools and the like. In the defendant's view, the breadth of the statute warrants a district court examination of the conduct underlying his prior burglary convictions. However, defendant does not assert that his prior convictions involved these alternative forms of burglary. Rather, the pertinent language of the statute is burglary of a *dwelling* in the nighttime. Regardless of the other proscriptions under the statute, *this case* involves the burglary of a dwelling, an inherently violent crime under U.S.S.G. §§ 4B1.1 and 4B1.2.

■ Defendant also attaches significance to the fact that his prior burglary convictions involved "seasonal dwellings"[1] as opposed to "dwellings." This is yet another attempt by the defendant to engage this court in a review of the conduct underlying the burglaries

---

1. At the sentencing hearing, defendant used the term "seasonal dwelling" to describe the structures at issue in his burglary convictions. On appeal defendant refers to the buildings as "sum-

mer camps." In either case, defendant recognizes that the buildings were used as dwellings when seasonally appropriate.

at issue. It may be true that in the off-season a seasonal dwelling is less likely to be occupied than a permanent residence. This distinction, however, is of no moment. Under § 4B1.2 burglary of a dwelling is per se a crime of violence. This designation obviates the need for a district court to consider the likelihood of occupancy at the time of the burglary. *United States v. Raynor*, 939 F.2d 191, 195–97 (4th Cir.1991) (burglary of unoccupied house); *United States v. Brunson*, 915 F.2d 392, 393 (8th Cir.1990) (per curiam) (burglary of unoccupied dwellings), *cert. denied*, 498 U.S. 1106, 111 S.Ct. 1011, 112 L.Ed.2d 1093 (1991). "[F]or purposes of determining career offender status under the Guidelines, there is no such thing as a ... non-violent burglary of a dwelling." *Telesco*, 962 F.2d at 166.

For the reasons set forth, the judgments of conviction and the sentences are affirmed.