Douglas v. Pratt                    CV-98-416-M    09/29/00

UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Charles G. Douglas, III and
Edward E. Hewson,
      Plaintiffs

      v.                                    Civil No. 98-416-M
                                            Opinion No. 2000 DNH 199
Shannon Pratt and
Associated Press,
      Defendants


                           **O R D E R**


      Plaintiffs Charles G. Douglas, III, and Edward E. Hewson
allege that the Associated Press (AP) and Shannon Pratt defamed
them in a March 15, 1998, article released by the AP (Count I).
Additionally, Counts III, IV, and V raise various claims sounding
in negligence and Count VI alleges that the AP's actions violated
the New Hampshire Consumer Protection Act, N.H. RSA 358-A, et
seq.  Douglas further alleges that the statements and the article
place him in a false light (Count II).  Defendants have filed
motions for judgment on the pleadings (document nos. 80 and 82).
See Fed. R. Civ. P. 12(c).  Plaintiffs object.

## Standard of Review

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In reviewing such a motion, the court must credit all material allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. See Feliciano v. State of Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). The court may grant a motion for judgment on the pleadings only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. See Gaskell v. The Harvard Cooperative Society, 3 F.3d 495, 497-98 (1st Cir. 1993).

## Factual Background[1]

On March 15, 1998, an article appeared on page A10 of the Portsmouth Sunday Herald entitled, "Caroline Douglas claims

---

[1]This recitation of facts is based on Plaintiffs' Third Amended Complaint and Plaintiffs' memoranda in opposition to the present motion. They are taken as true for the purposes of this motion only.

2

husband owes $500K" (<u>Sunday Herald</u> Article).  The article, written by Katherine Webster, a reporter for the AP, was released to and published by members of the AP, including the <u>Portsmouth Herald</u>.  The article included statements attributed to Pratt that concerned Hewson's appraisal of Douglas & Douglas, the former law firm of Plaintiff Douglas and his former wife, which was dissolved on December 31, 1996.

The <u>Sunday Herald</u> article focuses on events involved in the high profile divorce of Douglas, a former New Hampshire State Supreme Court Justice and former Member of Congress, from his former wife, Caroline, an attorney.  Hewson prepared an appraisal of Douglas & Douglas, for use in the divorce proceedings, which valued the law firm at zero.  The report submitted to the court did not mention $950,211 worth of work pending in the firm, also referred to as work-in-progress (WIP).  The bulk of that figure consisted of contingency fees the firm might obtain in the future.  In Hewson's opinion, such contingency fees (paid if the case is successful but not otherwise) cannot be valued until the case is complete, and he planned to so testify at trial.  The primary focus of the <u>Sunday Herald</u> article was Mrs. Douglas's

belief that she could not "get a fair divorce in New Hampshire, because of her husband's connections and the state's lack of safeguards against biased judges" Mrs. Douglas also faulted Hewson's appraisal, relied upon by the court in dividing the marital property in the Douglas's divorce. Mrs. Douglas is quoted as saying "I only wonder how may other people in this state have been hurt by cronyism, fraud and old-boy bias in the courtroom?" Sunday Herald Article at ¶ 6. The article goes on to recount the opinions of Mrs. Douglas's own appraiser, and of Pratt, regarding the Hewson appraisal report and the judge's reliance on it.

The Douglas divorce trial was set for September 15, 1998. Mrs. Douglas failed to appear at the trial and the judge refused to allow her brother, a paralegal who had previously represented her, to proceed in her absence. Mrs. Douglas was defaulted and a decree was entered in favor of Mr. Douglas. At the time of the AP article, Mrs. Douglas had appealed the property award, assigning error to the judge's refusal to allow her brother to represent her. She also claimed that Hewson's opinion – that the law firm had no value – was incorrect, primarily because the

4

report omitted mention of the $950,211 worth of WIP.  Because of the default, the only valuation evidence presented to the divorce court was Hewson's report.  Relying on Hewson's zero valuation of the couples' law practice, the trial judge awarded Mrs. Douglas back pay, but nothing for equity in the practice.

In January or February of 1998, Webster sent Pratt some information related to Hewson's appraisal.  Mrs. Douglas and her attorney had also been in contact with Pratt to request his services in relation to her divorce.[2]  And, they had been in contact with Webster.  In late February, Pratt, after reviewing Hewson's curriculum vitae, wrote to Mrs. Douglas's attorney.  He stated that Hewson appeared to have no training in business valuation.

Court orders had been issued in the Douglas divorce proceedings imposing rules of confidentiality regarding financial information produced during discovery.

---

[2]The pleadings do not state when this contact took place, other than prior to the publication of the Sunday Herald article.

5

Douglas and Hewson allege that Pratt and the AP defamed them in the article released by the AP and published by, among others, The Portsmouth Sunday Herald on March 15, 1998. Additionally, they claim Pratt and the AP were negligent in publishing those statements. Furthermore, Douglas claims invasion of privacy by being placed in a false light.

Defendants assert that the statements contained in the March 15, 1998, article are not actionable because they are protected opinions rather than statements of fact. Defendants also deny any negligence associated with making the statements or reporting them. Additionally, Defendants contend that Plaintiff Douglas cannot maintain a claim for defamation because the allegedly defamatory statements were not "of and concerning him." See Restatement (Second) of Torts, § 564A.

**Defamation (Count I)**

Plaintiffs point to the latter portion of the Sunday Herald article and the statements attributed to Pratt as constituting "[t]he crux of the defamatory 'sting'." See Hewson's Mem. in

6

Opp'n 5 (document no. 83).  That portion of the article reads as

follows, with Pratt's challenged statements underlined:

> [T]he main difference between the two appraisals lies
> in the $950,211 in work in progress.
>
> Hewson did not mention it in his reports, though the
> amount was listed in a footnote on the balance sheet he
> used.
>
> Appraisers might disagree about what percentage of the
> $950,211 could be collected from clients; but "it's
> totally improper to ignore it," said Shannon Pratt of
> Portland, Ore., a nationally recognized expert. Pratt,
> managing director of Willamette Management Associates,
> publisher of a business appraisal newsletter and author
> of several texts on business appraisal, reviewed
> Hewson's and Bishop's reports for the Associated Press.
>
> After adjusting Chuck's tax returns and assuming that
> three-quarters of the work in progress could be
> collected, Bishop arrived at a value of $1.1 million
> using the same method Hewson employed, he said.  Two
> other methods yielded slightly different results, but
> both topped $1 million, he said.
>
> Pratt questioned why Judge Coffey accepted Hewson's
> appraisal, since he did not follow accepted standards
> of business appraisal and his resume shows no training
> in business valuation.
>
> "If I were a judge ... I would have to think hard about
> whether I would accept him as an expert or his report
> as credible evidence," Pratt said.  Pratt said he had
> no qualms about Bishop's work.

<u>Sunday Herald</u> Article at ¶¶ 22-29.  Plaintiffs contend that, in the context of the whole article, these statements falsely imply, as fact, that "Mr. Douglas was defrauding the court by using an incompetent fraud as his expert," Third Am. Compl. at ¶ 25 (document no. 66).

In order to assert a prima facie case of defamation in New Hampshire, the "language complained of . . . must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority."  <u>Thomson v. Cash</u>, 119 N.H. 371, 373 (1979).  Under New Hampshire law, "the threshold question [in a defamation action] is whether the published words are reasonably capable of conveying the defamatory meaning or innuendo ascribed to them by the plaintiff."  <u>Id.</u> at 374.  Whether a statement is capable of defamatory meaning is a question of law.  <u>See</u> <u>id.</u>  If it is, it is a question for the jury whether such meaning was in fact conveyed.  <u>See</u> <u>id.</u>  However, "an action in libel cannot be maintained on an artificial, unreasonable, or tortured construction imposed upon innocent words, nor when only

'supersensitive persons, with morbid imaginations, would consider the words defamatory." Id. at 373 (citation omitted).

The First Amendment unquestionably protects opinions from defamation liability. There is no blanket protection for a statement framed as an opinion, but, to be actionable, such a statement must be factual or capable of being proven true or false. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990); Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir. 1997); Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 727 (1st Cir. 1992). Generally, a protected opinion is one that "involves expressions of personal judgment. . . ." Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000). This assessment must be made within the broader context of the statements made. See Milkovich, 497 U.S. at 21; Phantom Touring, 953 F.2d at 727; McCabe v. Rattiner, 814 F.2d 839, 842 (1st Cir. 1987). Therefore, "the question is not whether challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact." Phantom Touring, 953 F.2d at 727. Importantly, then, "if a statement of opinion either discloses

9

the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable." <u>Riley v. Harr</u>, Civ. A. No. 98-712-M, slip op. at 18 (D.N.H. March 3, 2000) (citing <u>Levin v. McPhee</u>, 119 F.3d 189, 197 (2d Cir. 1997))(internal quotations omitted). The statements challenged by Plaintiffs in this case are plainly protected opinions, and are not actionable.

A. Appraisers might disagree about what percentage of the $950,211 could be collected from clients; but "<u>it's totally improper to ignore it</u>," said Shannon Pratt of Portland, Ore., a nationally recognized expert.

Whether it was "totally improper" for Hewson to give no weight to the value of work in progress is inherently a subjective matter, and therefore not capable of being proven true or false. Furthermore, even if Pratt's statement could be interpreted as implying that Hewson did something "wrong," the statement is still protected as loose figurative language, hyperbole and epithet. Because the article outlines the information on which Pratt based his opinion, his conclusion is also fully explained by the facts available to him and disclosed in the article. <u>See</u> <u>Partington v. Bugliosi</u>, 56 F.3d 1147, 1156

10

(9th Cir. 1995) ("when a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment").

B.      Pratt questioned why Judge Coffey accepted Hewson's appraisal, since <u>he did not follow accepted standards of business appraisal and his resume shows no training in business valuation</u>.

The second challenged statement, as a whole, describes Pratt's own questioning of the judge's decision to accept Hewson's expert opinion, because Hewson "did not follow accepted standards of business appraisal" (in Pratt's opinion) and because "his resume shows no training in business valuation." <u>Sunday Herald</u> Article at ¶ 26. Plaintiffs claim the statement is actionable because it amounts to defamatory assertions of fact related to them on which Pratt based his questioning of the judge's reliance. However, it is clear from the surrounding context that the comment was based on Hewson's review of Hewson's reports (which Plaintiffs do not deny failed to include the WIP) and that Pratt concluded Hewson "did not follow accepted standards of business appraisal." Thus, for the same reasons that an opinion that Hewson did something "totally improper" is

11

protected, Pratt's conclusion, as described in this statement, is also protected.  See Partington, 56 F.3d at 1156.

The second challenged portion of the statement - "his resume shows no training in business valuation" - is true.  See Third Am. Compl. at ¶12 (document no. 66).  Plaintiffs claim this is defamatory because they imaginatively interpret it to falsely attack Hewson's credentials and, indirectly, Douglas's own employment of him as an expert, when Hewson, in fact, has experience beyond what is included in his resume that would have been revealed in trial testimony.  But his resume did not reveal that experience and the statement addresses the content of his resume.  Pratt did not falsely attack Hewson's credentials, because the reader was provided with information necessary to fully understand that Pratt's questioning of the judge's reliance on Hewson was based on Pratt's review of the same limited information available to the judge at the time the decision was made to accept Hewson's expert opinion – his resume.

C.  "<u>If I were a judge ... I would have to think hard about whether I would accept him as an expert or his report as credible evidence</u>," Pratt said.  Pratt said he had no qualms about Bishop's work.

The final challenged statement is an expression by Pratt of what he would have done had he been the judge.  That expression is not actionable.

Despite Plaintiffs claim that the article implies Pratt "purportedly engaged in a review of all the pertinent data," <u>see</u> Douglas Mem. in Opp'n at 25 (document no. 93), when the challenged portion of the article is read as a whole - that is, the specific statements attributed to Pratt are considered in the context of the entire article - it is clear that Pratt's opinion or conclusion as to what he might have done had he been the judge were based on his review of the two reports and Hewson's resume.  Moreover, neither the article nor Pratt's conclusions suggest that Pratt based his opinion on anything but the reports and the resume.  Although Plaintiffs contend that the fact that Pratt had spoken with Mrs. Douglas and her attorney "should have been revealed" to illustrate his bias, as explained above, to be actionable, the <u>statement</u> must imply that the opinion rests on undisclosed facts, a situation not presented in this case.  <u>See</u>

13

<u>Levinsky's</u>, 127 F.3d at 127; <u>Riley</u>, Civ. A. No. 98-712-M at 18. Because the court finds the challenged statements constitute opinions based on disclosed facts and do not imply the existence of undisclosed defamatory facts, the statements are non-actionable opinions.

The AP's publication of Pratt's opinions in the <u>Herald Sunday</u> article is similarly protected. The statements are presented in the article as Pratt's opinions, based on disclosed sources, to explain Mrs. Douglas's belief that she was entitled to more in the divorce award. Thus, they are protected under <u>Milkovich</u>.

Because the statements are non-actionable protected opinions, it is not necessary to determine whether they are "of and concerning" Douglas, though it would be a stretch to so find.

**<u>False Light (Count II)</u>**

Plaintiff Douglas also alleges that the <u>Sunday Herald</u> article amounts to an invasion of privacy, placing him in a false light. Defendants claim New Hampshire does not recognize the tort and, therefore, urge the court to dismiss it.

While there is no New Hampshire precedent directly recognizing the common law tort of false light invasion of privacy, this court has previously concluded that, "[g]iven its demonstrated commitment to the protection of privacy rights in Hamberger [v. Eastman], 106 N.H. 107 [(1964)], it is likely that the New Hampshire Supreme Court would also recognize the false light tort." Riley, Civ. A. No. 98-712-M at 46. Nevertheless, Douglas has not sufficiently supported a false light claim. On the contrary, because false light claims are equally restricted by constitutional protections, some statements cannot support a false light claim. See Veilleux v. National Broadcasting Co., 206 F.3d 92, 134 (1st Cir. 2000); Brown v. Herst Corp., 54 F.3d 21, 27 (1st Cir. 1995). Because the challenged statements are protected opinions, Douglas cannot rely on them to establish a false light claim.


**Negligence Claims (Counts III, IV, & V)**

Plaintiffs also assert a negligence claim against Pratt under theories of third-party liability and violation of professional standards. Additionally, Plaintiffs have brought

15

claims for "negligent training and supervision" against the AP, and Hewson asserts a claim for "negligent reporting" against the AP. Defendant AP contends that "dismissal of [these] counts is subsumed under" the arguments for dismissal of the defamation claim because these claims are also protected by the First Amendment.

Negligence consists of the breach of a duty that causes foreseeable harm. Gilbert v. Essex Group, Inc., 930 F. Supp. 683, 690 (D.N.H. 1993). To avoid judgment on the pleadings, Plaintiffs must adequately allege each of the elements of negligence. See Gilbert v. Essex Group, Inc., 930 F. Supp. at 689.

The negligence claim against Pratt alleges breach of a duty to third parties and violation of professional standards. Plaintiffs have failed to adequately allege a cognizable duty owed to them arising from the professional standards applicable to appraisers, or any breach of duty to third parties. The professional standards cited in Douglas' memorandum refer to duties owed to clients. Douglas was not a client of Pratt, nor was Hewson. The "obligation to the general public as a third

16

party beneficiary of the work" cited by Plaintiffs, <u>see</u> Third Am. Compl. at 12 (document no. 66), makes reference to the duty recognized in <u>Spherex, Inc. v. Alexander Grant & Co.</u>, 122 N.H. 898 (1982) – a duty owed by professional accountants to those who foreseeably may rely on their work. <u>See also</u> <u>Morvey v. Hanover Insurance Companies</u>, 127 N.H. 723, 726 (1986) (citing <u>Spherex</u>). Neither Plaintiff claims to have relied on Pratt's work, or that Pratt should reasonably have foreseen such reliance. No facts are pled which support any special circumstances giving rise to a foreseeable, or actionable, duty owed by Pratt to Douglas or Hewson. Pratt owed them no cognizable duty beyond those imposed by the law of defamation and they cannot recover for negligence based on Pratt's statements.

Furthermore, to the extent Plaintiffs rest their negligence allegations on an alleged breach of the confidentiality order entered in the Douglas divorce proceedings, they have wholly failed to provide the court with any legal support for the proposition that such a breach can give rise to a private cause of action for negligence. The Superior Court's order was issued in an equitable proceeding and is injunctive in character. If

17

the order has not been obeyed by someone subject to it, a civil contempt proceeding, before the issuing court, might well be available, but a private common law negligence action is not. See, e.g., Burke v. Guiney, 700 F.2d 767, 769 (1st Cir. 1983); Eldim, Inc. v. Mullen, 710 N.E.2d 1054, 1057 (Mass. App. 1999). The civil contempt complaint must be brought before the court issuing the violated order, since that court is best able to determine both the scope and intent of the equitable order and the appropriate sanction(s) for its violation. See, e.g., D. Patrick, Inc. v. Ford Motor Co., 8 F.3d 455, 459 (7th Cir. 1993).

Turning to Plaintiffs' claims against AP, the First Amendment protects newspapers or news services from liability for damages, except for publication of defamatory material (with actual malice in the case of public figures). See, e.g., Evans v. American Federation of Television and Radio Artists, 354 F. Supp. 823, 839 (S.D.N.Y. 1973), rev'd on other grounds, Buckley v. American Federation of Television and Radio Artists, 496 F.2d 305 (2d Cir. 1974) (reminding in dicta that "[t]here is no legal requirement for the press to present a 'fair' balance of opinion and analysis. Subject only to the laws of libel, there is not

even a requirement of truthfulness and accuracy."); <u>Langworthy v. Pulitzer Publishing Co.</u>, 368 S.W.2d 385, 390 (Mo. 1963) ("No action for damages lies against a newspaper for merely inaccurate reporting when the publication does not constitute libel."). Since the <u>Sunday Herald</u> article did not defame plaintiffs, no cause of action based on that publication can proceed.

## Violation of Consumer Protection Act (Count VI)

Finally, Plaintiffs allege the conduct of the AP constitutes a violation of the New Hampshire Consumer Protection Act, N.H. RSA 358-A, et. seq., because the AP disparaged the services or businesses of the plaintiffs through false or misleading representations of fact. Because the article did not contain false or misleading representations of fact, Plaintiffs' Consumer Protection claim cannot survive either.

## Conclusion

The statements challenged by Plaintiffs are non-actionable protected opinions. Similarly, the AP's use of the statements in the context of the <u>Sunday Herald</u> article is protected because

19

there is no implication of fact. Basically, all of the asserted claims are without merit. Accordingly, Defendants' motions for judgment on the pleadings (document nos. 80 and 92) are granted.

The Clerk of Court shall enter judgment in accordance with the terms of this order and close the case.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

September 29, 2000

cc:  Charles G. Douglas, III, Esq.
     Irvin D. Gordon, Esq.
     Susanna G. Robinson, Esq.
     William L. Chapman, Esq.

20