UNITED STATES of America, Appellee,

v.

Maria Elvira MORENO, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Andres GONZALEZ, Defendant,
Appellant.

Nos. 90–2185, 90–2186.

United States Court of Appeals,
First Circuit.

Heard June 6, 1991.

Decided Oct. 17, 1991.

Richard Abbott, for defendant, appellant Moreno.

Jeffrey A. Denner, for defendant, appellant Gonzalez.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland Me., were on brief, for appellee.

Before SELYA and CYR, Circuit Judges, and STAHL,* District Judge.

CYR, Circuit Judge.

Appellants Andres Gonzalez and Maria Moreno challenge their convictions for conspiring to possess in excess of 500 grams of cocaine, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) & 846, and Gonzalez appeals the sentence imposed by the district court.

I

DISCUSSION

*Closing Argument*

■ .Appellants' joint challenge to their convictions stems from the following state-

---

* Of the District of New Hampshire, sitting by    designation.

ment in the prosecutor's closing argument: "You [the jury] should [be] satisfied by this point that in the Colombian culture, if you believe Gonzalez, that emeralds are practically synonymous with the word cocaine." Appellants complain of prejudicial error, in that (1) the evidence does not support the asserted relationship between "emeralds" and "cocaine," and (2) the reference to "Colombian culture" is a racial slur, violative of their constitutional rights. As appellants raised no contemporaneous objection to the prosecutor's statement, we review for plain error, *United States v. Mateos–Sanchez*, 864 F.2d 232, 240 (1st Cir.1988); *United States v. Williams*, 809 F.2d 75, 82 (1st Cir.1986), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987), and find none.

Appellants' contentions omit mention of the fact that the prosecutor's argument was made in response to Gonzalez' trial testimony to the effect that, in Colombia, drug dealers and emerald dealers are one and the same. Indeed, the challenged statement was made contingent on whether the jury "believe[d] Gonzalez." Thus, it was an invitation to draw the reasonable inference that Gonzalez' own use of the term "emeralds" was a euphemism fairly understood as indicating his prior involvement in Colombian cocaine smuggling; an interpretation the appellants have made no effort to rebut. There was no error.

Appellant Moreno, likewise for the first time, raises other challenges to the government's closing argument. First, Moreno mischaracterizes the prosecutor's suggestion to the jury—"to put themselves in the place of the defendant Maria Moreno"—as an invitation "to elevate their culture (and cultural biases) at the expense of [her own] culture, upbringing and heritage," and as an improper resort to the "golden rule" argument. We have held that the "golden rule" argument improperly "encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir.1988) (quoting *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir.1978), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980)).

■ The prosecutor did not invoke the "golden rule" argument. Moreno was confronted at trial with evidence that she repeatedly "gift-wrapped" cocaine for delivery to purchasers and that she was with Gonzalez at the time of the cocaine sale immediately preceding their arrests. Moreno defended on the theory that she was unaware of her long-term, live-in boyfriend's cocaine distribution activity. Far from appealing to jury bias, the prosecutor merely urged the jury to focus on the evidence in deciding whether Moreno was, as she contended, unaware of Gonzalez' drug trafficking. The prosecutor, quite appropriately, asked the members of the jury to use their collective common sense in weighing all the evidence relating to Moreno. *See United States v. Passos–Paternina*, 918 F.2d 979, 985 (1st Cir.1990), (jury may draw "inferences formulated ... in the light of its collective understanding of human behavior in the circumstances revealed by the evidence."), *cert. denied*, —— U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 732, and *cert. denied*, —— U.S. ——, 111 S.Ct. 2809, 115 L.Ed.2d 981 (1991).

*Gonzalez' Sentence*

Gonzalez complains that the district court committed three sentencing errors.

(i) *Quantity of Cocaine*

Gonzalez argues that the total quantity of cocaine involved in the conspiracy was from two to three and one half kilograms, rather than the fifteen-to-fifty kilogram amount calculated by the district court. The evidence revealed that Gonzalez agreed to supply ostensible drug dealers from Canada with five to ten kilograms of cocaine on a biweekly basis. We need consider only the government's "Quebec cocaine" contention in evaluating Gonzalez' claim.

■ While Gonzalez and Moreno were in Maine to consummate a cocaine deal with John Carmichael, a government informant, Gonzalez was introduced to two undercover agents posing as Canadian cocaine buyers

supposedly awaiting the arrival of the three kilograms Gonzalez was to deliver to Carmichael. Gonzalez came to Maine without the cocaine, however, and demanded payment in advance. Carmichael informed Gonzalez that the Canadian buyers were unhappy with Gonzalez' terms. Gonzalez later met with Carmichael's buyers and told them that he could supply five to ten kilograms of cocaine at fifteen-day intervals. Moreover, according to the testimony of Michael Cuniff, the undercover agent who negotiated the Quebec deal with Gonzalez, Gonzalez *agreed* to supply these amounts, with the first delivery to be made within a week.

Gonzalez does not dispute the district court's consideration of "quantities ... of [cocaine] not specified in the count of conviction ... if they were part of the same course of conduct or ... common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3(a)(2) comment. (back'd). *See United States v. Blanco,* 888 F.2d 907, 908–11 (1st Cir.1989). Nor does he take issue with the premise of U.S.S.G. § 2D1.4, application note 1: "If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." Instead, Gonzalez contends that the court should have excluded from its calculation the quantities of cocaine he negotiated to supply to the putative Canadian buyers, because he "did not intend to produce and was not reasonably capable of producing [those quantities]." *Id.*

The district court found, however, that Gonzalez "was not just puffing" and that he was "able to produce what he was talking about." Moreover, the district court found that the cocaine he negotiated to sell to the undercover agents was part and parcel of the criminal conspiracy of which he was convicted. Since there was no clear error, the district court's findings will not be disturbed. *United States v. Ruiz,* 905 F.2d 499, 508 (1st Cir.1990) ("where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous").

### (ii) *Role in Conspiracy*

Gonzalez disputes the ruling that his role in the cocaine conspiracy was that of an "organizer, leader, manager, or supervisor." *See* U.S.S.G. § 3B1.1(c). We find no error. Gonzalez and Moreno were co-conspirators. There can be no question that Moreno's role in the offense was distinctly subordinate to that of Gonzalez. Gonzalez, not Moreno, conducted the negotiations with the informant and with the undercover agents, and received payment for the cocaine. The district court finding was well founded.

### (iii) *Obstruction of Justice*

The district court enhanced Gonzalez' base offense level, for obstructing justice. Sentencing guideline section 3C1.1 authorizes a two-point enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...."

Prior to his arrest, Gonzalez, whose full name is Jairo Andres Valejo Gonzalez, was known to the informant and the undercover agents, and to all but one of the other witnesses at trial, simply as "Andres Gonzalez" or "Andrew." Linda Speer, who arranged the introduction between the informant and Gonzalez, testified that she had known Gonzalez by the name "Jairo Valejo," the other two components in Gonzalez' full name. Speer and Gonzalez had known each other for several years prior to these events.

DEA Agent Cuniff testified that he arranged for the three-kilogram cocaine purchase from "Andres Gonzalez," who later became known to him as "Jairo Valejo." Cuniff did not describe how he later came to know the defendant as Jairo Valejo. There is no evidence that Gonzalez used the name Jairo Valejo in any conversation connected with the criminal conduct constituting the offense of conviction. Rather, the record reveals that he consistently used

and answered to the name Andres Gonzalez throughout the period spanned by the offense of conviction, and thereafter. Nor does the record indicate that the authorities were confused or misled as to the true identity of the target of their investigation and prosecution.

Although Gonzalez objected to the recommended obstruction-of-justice enhancement at the time of sentencing, he did not contest the government's offer of proof to the effect that he had attempted to impede the investigation by refusing to recognize that he was known, at least by some, as Jairo Valejo. On one occasion, according to the government's proffer, when Agent O'Donoghue greeted Gonzalez as Jairo Valejo, Gonzalez specifically responded, "no, not me." The government asserted further that Gonzalez, while in jail, refused to accept a magazine delivery directed to Jairo Valejo. The district court concluded that Gonzalez' "very convenient use of his spanish (sic) surnames"[1] amounted to an obstruction of justice. The court accordingly increased the base offense level by two levels pursuant to U.S.S.G. § 3C1.1.

Gonzalez contests the sufficiency of the evidence supporting the finding that he used an improper name. He insists that he consistently used and answered to the name Andres Gonzalez at all times relevant to the conduct that formed the basis for his conspiracy conviction. We need not address this claim, as we conclude that the Gonzalez sentence must be vacated on other grounds.

Alternatively, Gonzalez asserts that his conduct does not come within the scope of U.S.S.G. § 3C1.1. The question whether the scope of section 3C1.1 encompasses Gonzalez' conduct is subject to *de novo* review. *United States v. Irabor*, 894 F.2d 554, 555 (2d Cir.1990); *United States v. Saintil*, 910 F.2d 1231, 1232 (4th Cir.1990);

*United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir.1989).

The Sentencing Commission recently added replacement notes 3, 4 and 5 to the section 3C1.1 commentary, in order to clarify application of the guideline. *See* U.S.S.G.App. C (amend. 347) (effective November 1, 1990). Application note 3(g) states, in relevant part:

3. The following is a *non-exhaustive* list of *examples* of the *types of conduct* to which this enhancement applies:

. . . .

(g) providing a *materially* false statement to a law enforcement officer *that significantly obstructed or impeded* the official investigation or prosecution of the instant offense.

U.S.S.G. § 3C1.1 comment. (n.3(g)) (emphasis added).

Application note 4(b) states, in relevant part:

4. The following is a *non-exhaustive* list of *examples* of the *types of conduct* that, absent a separate count of conviction for such conduct, *do not warrant* application of this *enhancement,* but *ordinarily* can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range:

. . . .

(b) making false statements, not under oath, to law enforcement officers, *unless Application Note 3(g) above applies;*

. . . .

U.S.S.G. § 3C1.1 comment. (n.4(b)) (emphasis added).

■ The present section 3C1.1 enhancement can only have been based on a determination that Gonzalez obstructed justice by disclaiming the appellation Jairo Valejo on one occasion and/or by his acquiescence to inconsistent interchanges of the various components in his true name.[2] Since none

---

1. The entire finding was as follows:

There is also no doubt in the court's mind that [Gonzalez] has obstructed justice based on the very convenient use of the spanish (sic) surnames[,] and with the proffer made by the government, even as late as having been in-

carcerated after having been found guilty, he is still not accepting the Jairo Valejo name.

2. We do not understand the government to contend that a refusal to accept a delivery of magazines constituted a "statement." *See* U.S.S.G. § 3C1.1 comment. (n. 5).

of Gonzalez' conduct included a false statement under oath, and his acquiescence entailed no statement at all, section 3C1.1, note 4(b), required recourse to § 3C1.1, note 3(g), which is contingent on evidence of a significant obstruction or impediment of the investigation or the prosecution.[3]

The government neither alleged nor demonstrated that its investigation or prosecution was obstructed or impeded. The government's proffer referred to "a calculated course of *trying* to avoid the detection of [Gonzalez'] true life activities" (emphasis added), but does not suggest that either the investigation or the prosecution was significantly impeded or obstructed. The present record does not support the enhancement of Gonzalez' base offense level for obstruction of justice under new application notes 3(g) and 4(b) to U.S.S.G. § 3C1.1.

*The judgments of conviction are affirmed. The sentence imposed on appellant Gonzalez is vacated and his case is remanded to the district court for resentencing, following such further proceedings as the district court deems appropriate.*

---

**3.** The Tenth Circuit, applying the 1990 version of § 3C1.1, held that "actual, significant hindrance to investigation is necessary when false aliases are given, not under oath, during the investigation." *United States v. Urbanek,* 930 F.2d 1512, 1515 n. 2 (10th Cir.1991) (noting: "No cases decided after the 1990 clarification conflict with [that] holding").

We note that the 1990 commentary clarifying § 3C1.1 likewise counsels against an enhancement where the defendant has "provid[ed] a false name or identification document at arrest, except where such conduct *actually resulted* in a significant hindrance to the investigation or

prosecution of the instant offense," U.S.S.G. § 3C1.1 comment. (n. 4(a)) (emphasis added). This commentary treats with more serious conduct than that alleged against Gonzalez, since the provision of a false name at the time of arrest, when proper identification may be particularly important to the criminal investigation or prosecution, poses a more serious threat to the integrity of the investigation or prosecution. Thus, application note 4(a), which warns against enhancing a sentence for conduct arguably more serious than that alleged against Gonzalez, affords analogous support for his contention.