974 F.2d 1329
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Isao Isadorus IMA, Defendant, Appellant.
 No. 92-1220.
 United States Court of Appeals,
First Circuit.
 August 27, 1992
 
 Appeal from the United States District Court for the District of Maine
 Stephen H. Mackenzie on brief for appellant.
 Richard S. Cohen, United States Attorney, Richard W. Murphy, Assistant United States Attorney and Margaret D. McGaughey, Assistant United States Attorney, on brief for appellee.
 Before Torruella, Cyr, and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 The appellant, Isao Isadorus Ima, pled guilty to one count of violating 8 U.S.C. § 1326, entering the United States after having been deported. His appeal is addressed solely to the district court's sentencing decision, specifically to the court's adding a 2 level enhancement for obstruction of justice and declining to subtract 2 levels for acceptance of responsibility.
 
 
 2
 The base offense level for a violation of 8 U.S.C. § 1326 is 8. U.S.S.G. § 2L1.2(a).[1] The district court found that Ima had obstructed justice by providing materially false information to the probation officer, in an attempt to affect the sentence ultimately imposed, during the course of that officer's preparation of the presentence report. The court, therefore, pursuant to U.S.S.G. § 3C1.1,[2] increased the offense level by 2 to a total offense level of 10. The court also concluded that Ima was not entitled to a 2 level downward adjustment for acceptance of responsibility. The resulting applicable guideline range for someone, like Ima, in criminal history category I, is 6-12 months. Ima was sentenced to an 8 month term of imprisonment.
 
 
 3
 As an initial matter, the government contends that this appeal is moot because Ima's term of incarceration was expected to terminate on or about May 27, 1992 and he was subject to immediate deportation upon his release. Although that date has now passed, counsel for Ima has not told us whether, in fact, Ima has been released and deported, but neither does he contest either of these assumptions, so we will accept them as accurate.
 
 
 4
 Counsel contends, nonetheless, that this appeal is not moot because of potential collateral consequences. His reasoning runs as follows: The collateral consequences pertain to a potentially increased sentence if Ima should, in the future, once again, enter the United States and, once again, face federal criminal sentencing. Because the sentence, presently at issue, was a sentence of imprisonment of at least 60 days, this sentence would be counted in any future sentence, by adding 2 points to Ima's criminal history category. See U.S.S.G. § 4A1.1(b). If, however, we accept Ima's arguments on the merits, i.e., there was error in increasing the offense level by 2 (from offense level 8 to level 10) for obstruction of justice as well as in failing to decrease the offense level by 2 (from offense level 8 to level 6) for acceptance of responsibility, the applicable sentencing guideline range for the instant offense would be 0-6 months. If upon remand in this appeal, the district court were to resentence Ima to a term (within this guideline) of less than 60 days, this corrected sentence could not be counted in determining his criminal history category in any future sentence.
 
 
 5
 We pass an initial question whether the likelihood of these multiple contingencies occurring make the claimed collateral consequences too speculative and attenuated to negate mootness. Because there could be a benefit to Ima in having his sentence corrected even though he already has served that sentence, we decline to find the appeal moot and we proceed to the merits. United States v. Dickey, 924 F.2d 836, 838 (9th Cir.) (appeal is not moot because appellant was sentenced to a term of imprisonment in excess of 60 days and any possible future sentencing under the guidelines would result in an increase of criminal history score by 2 points instead of single point he would have received had he been sentenced to probation), cert. denied, 112 S. Ct. 383 (1991); United States v. Mares-Molina, 913 F.2d 770, 773 n.3 (9th Cir. 1990) (similar); United States v. Montenegro-Rojo, 908 F.2d 425, 431 n.8 (9th Cir. 1990) (similar).
 
 
 6
 We flesh out the context in which Ima's arguments are made. In the course of the presentence investigation, Ima told the probation officer that he entered the United States on September 1, 1991 to consult with his lawyers and others on business and immigration matters. He said that his corporation, U.S. Japan Hitech Hitouch Research Institute, was legally registered in the United States and was set up to invest up to $500 million of Japanese funds in the United States in cooperation with Bowdoin College and other institutions. He said that "the people concerned" strongly encouraged him to come to the United States as soon as possible.
 
 
 7
 He also claimed that he was "informed by the American Embassy in Tokyo" that every entrepreneur, who, on and after October 1, 1991, brings $1 million or more to the United States and thereby creates at least ten jobs, would be given United States citizenship. He wanted to consult with his lawyers about his entire family immigrating here using a $5 million start-up fund.
 
 
 8
 By this exposition, Ima sought to explain that he entered the United States in haste and to avoid the delay which would occur in following the procedure required for lawful entry. Ima then explained that, on September 13th, he went to Nomura International Securities in Manhattan, New York and picked up three checks, totally $5 million. On his return trip to Portland, Maine, however, he was in a car accident in Connecticut, and the checks blew away.
 
 
 9
 In investigating these claims, the probation office was advised by Peter Chepucavage, the general counsel at Nomura International Securities, that, although Ima was there briefly on September 13th, there is "no record of significant activity during Mr. Ima's visit or any indication that checks were issued." Further, the police officer investigating Ima's car accident reported that there were no papers or documents strewn about at the accident scene or any indication that documents were lost. The car was damaged, but intact and towed from the scene. Ima and his wife had access to their vehicle after the accident and removed their many belongings from the car.
 
 
 10
 In finding an obstruction of justice, the court concluded that the story provided by Ima to the probation officer concerning his intended investment undertakings and the securing and subsequent loss of $5 million worth of checks was materially false. The court also concluded that this obstruction of justice negated Ima's claim of acceptance of responsibility. See U.S.S.G. § 3E1.1, comment. (n.4) ("Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct").
 
 
 11
 On appeal, Ima contends that the district court erred (1) in assessing the 2 level upward adjustment because the information provided was not material[3] and (2) in not assessing a 2 level downward adjustment because the obstruction of justice finding was erroneous and he demonstrated sincere contrition and remorse. We need only consider the first contention.
 
 
 12
 The standard of review of a finding of materiality to support an enhancement pursuant to § 3C1.1 for providing materially false information is the subject of disparate views. Compare United States v. Hicks, 948 F.2d 877, 886 (4th Cir. 1991) (the question of materiality is a factual determination subject to the clearly erroneous standard) with United States v. Rodriguez, 943 F.2d 215, 218 (2d Cir. 1991) (the appropriate interpretation of the definition of the word "material" is a matter of legal interpretation subject to de novo review); see also United States v. Cusumano, 943 F.2d 305, 315 (3d Cir. 1991) (assuming, without deciding, that the standard of review is plenary), cert. denied, 112 S. Ct. 881 (1992); cf. United States v. Moreno, 947 F.2d 7, 10 (1st Cir. 1991) (whether conduct is encompassed within the scope of § 3C1.1 is subject to de novo review). We will assume, without deciding, that our review of a finding of materiality is de novo, for even pursuant to this standard, more favorable to Ima, there was no error.
 
 
 13
 A probation officer conducts a presentence investigation to aid the court in its determination of an appropriate sentence. Information that, if believed, would tend to influence or affect the issue under determination, i.e., the appropriate sentence, is material. U.S.S.G. § 3C1.1, comment. (n.5); see also United States v. Dedeker, 961 F.2d 164, 166-67 (11th Cir. 1992) (a past conviction, which would not affect the criminal history category, is nonetheless material to the choice of a sentence within a range and thus failure to disclose this conviction can warrant enhancement pursuant to § 3C1.1). We agree with the district court that Ima's story of why he entered the country illegally was designed to place his conduct of illegal entry in the most favorable light and to gain the court's sympathy in the hope of a lower sentence within the guideline range. A court might well impose a shorter sentence on a defendant who, although entering unlawfully, did so because of a misguided impression of urgency in pursuit of legitimate business and family concerns, as compared to a defendant with no such misapprehension or benign intentions. There was no error in district court's finding that Ima provided materially false information as described by § 3C1.1 and imposing a 2 level enhancement for obstruction of justice.
 
 
 14
 We note that Ima's claim that his appeal is not moot depends on our acceptance of both of his arguments on the merits. We have rejected his contention that the 2 level increase (from level 8 to level 10) for obstruction of justice was error. Consequently, even were we to accept his other contention, that he should have been given a 2 level reduction for acceptance of responsibility, the offense level would simply revert back to the original base offense level of 8. Ima gains no benefit in only having his offense level reduced to level 8. The guideline range for offense level 8 is 2-8 months. Any sentence imposed within this range would necessarily be a term of imprisonment of at least 60 days. The increase in the criminal history category, should Ima in the future again face criminal sentencing, would occur irrespective of the acceptance of responsibility determination. We, therefore, need not address that argument. We add only 2 comments. First, a finding of obstruction of justice, which was the basis for the district court's refusal to award a 2 level reduction for acceptance of responsibility, is, in the usual case, sufficient support for such refusal. United States v. Aymelek, 926 F.2d 64, 69 (1st Cir. 1991); U.S.S.G. § 3E1.1, comment. (n.4). Second, the district court's finding that Ima's explanation for his illegal entry was false is not clearly erroneous and, independent of its materiality for obstruction of justice purposes, such conduct is inconsistent with acceptance of responsibility. See United States v. DeFelippis, 950 F.2d 444, 447 (7th Cir. 1991) (defendant's false characterization as to his employment status, while not material to the presentence investigation, evidenced a continuing attempt to rationalize and minimize his conduct and supported a rejection of a reduction for acceptance of responsibility).
 
 We summarily affirm. Loc. R. 27.1
 
 
 [1]
 This reference, as well as all subsequent references, are to the guidelines in effect as of November 1991
 
 
 [2]
 "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1
 Among the examples of the types of conduct to which this enhancement applies, the guideline commentary lists "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1, comment. (n.3(h)).
 Material information, as used in § 3C1.1, means information "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.5).
 
 
 [3]
 We summarily reject Ima's additional claim that the burden of showing the falsity of the information was inappropriately placed on him. The reported statements of Mr. Chepucavage and of the police officer investigating Ima's automobile accident belie Ima's contention that the government failed to put forth evidence of the untruthfulness of his statements
 Likewise, we summarily reject Ima's contention that the district court failed to determine that he intended to obstruct justice by making the statements at issue. The court expressly rejected Ima's assertion of a language barrier and concluded that his statements were an obvious effort to affect his criminal sentence.