Hagemike v. SSA                    CV-94-595-B    02/26/96
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE


Catherine Hagemike

     v.                                  Civil No. 94-595-B

Shirley S. Chater, Commissioner of
Social Security Administration



                        **O R D E R**

     Catherine Hagemike appeals the decision of the Social

Security Administration ("SSA") denying her application for

disability insurance and Supplemental Security Income benefits.

She contends that the Administrative Law Judge ("ALJ") failed to

adequately develop the factual record, and she challenges the

ALJ's disability determination.  For the reasons that follow, I

affirm the decision.


                  I.   **BACKGROUND**[1]

     Hagemike filed applications for disability insurance and

Supplemental Security Income benefits on November 30, 1992,

alleging an inability to work since September 18, 1992, when she

_____

     [1]   Unless otherwise indicated, the facts are taken from the
stipulated facts filed jointly by the parties.

was discharged from her job at a hot tub facility. She alleges a disability due to chronic low back pain caused by a back injury that required subsequent surgeries. At the time of her applications, she was thirty-one years old. She was educated through the tenth grade and had unskilled and semi-skilled work experience.

Hagemike first injured her back in 1986. She underwent a laminectomy procedure at L4-5 and L5-S1 in 1987. Her condition improved following surgery and the doctor allowed light duty work with no heavy lifting or bending. She was next treated for back pain, with radiating pain into her legs, in November 1992 by Dr. Roy A. Hepner. Dr. Hepner diagnosed lumbar degenerative disc disease status post discectomy and recommended physical therapy. After a flare-up of her symptoms in January 1993, Dr. Hepner recommended a full work-up of evaluative tests including a psychological evaluation. In April, she had a discography procedure which showed that she had "failed back syndrome status-post discectomy" with two level lumbar degenerative disc disease. Hagemike then underwent spinal fusion surgery on June 9, 1993.

In the first months after surgery, Hagemike improved but continued to experience back and leg pain and then pain in both of her knees. She was diagnosed with "patellofemoral syndrome"

2

affecting her knees and was advised to avoid bent knee activities, to use ice and non-steroid medication, and to attend physical therapy in order to develop a home exercise plan. By December, her examinations showed that her knee condition had improved but still required physical therapy and that her back had reached the maximum amount of medical improvement. The report noted the difficulty caused by the combination of her back and knee problems. By February 1994, Hagemike could walk quite a bit, was doing some housework with rest breaks, and her back flexibility had improved. She had a sacroiliac injection in May 1994, to determine whether she had sacroiliac syndrome with limited results. By June, 1994, Dr. Hepner reported that Hagemike's condition had improved.

Dr. Hepner wrote a letter to the SSA in February 1994 stating that all of Hagemike's functional activities were impaired due to her back condition, but that he had not done a formal functional capacity assessment. He diagnosed chronic low back pain and radiculitis. Previously, in February 1993, a Disability Determination Services ("DDS") doctor completed a residual functional capacity ("RFC") assessment based on Hagemike's medical records at that time. He determined that despite her back injury, surgery, and pain, she could still lift

3

twenty pounds occasionally, ten pounds frequently, that she could sit, stand, and walk for up to six hours a day, and that her ability to push and pull was unlimited. He also decided that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. Another DDS doctor reconsidered the RFC in July 1993, a month after the back fusion surgery, and affirmed the RFC findings.

Before the hearing on June 15, 1994, Hagemike was notified of her right to be represented but she chose to go forward at the hearing without a representative. Hagemike, her husband, and her mother appeared and testified at the hearing. A vocational expert testified that Hagemike could not return to any of her previous work but could do some food preparation work requiring only light exertional levels, bench assembly jobs, or sedentary self-service cashier positions. When the ALJ added a restriction to allow her to lie down periodically, the vocational expert testified that no jobs were available.

The ALJ issued his decision on July 5, 1994, denying Hagemike's applications for benefits. Hagemike appealed to the Appeals Council, which denied review, and then appealed to this court.

4

## II.  **STANDARD OF REVIEW**

After a final determination by the Commissioner[2] and upon request by a party, this court is authorized to review the pleadings and the transcript of the record of the proceeding, and enter a judgment affirming, modifying, or reversing the decision. 42 U.S.C.A. § 405(g) (West Supp. 1995).  The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence. Id.; Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence.  Id. Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'"  Id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  However, if the Commissioner has misapplied the law or

---

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. Pub.L. No. 103-296.

has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary. <u>Carroll v. Secretary of Health & Human Servs.</u>, 705 F.2d 638, 644 (2d Cir. 1983). <u>See also</u> <u>Slessinger v. Secretary of Health & Human Servs.</u>, 835 F.2d 937, 939 (1st Cir. 1987).

## III. <u>DISCUSSION</u>

On appeal, Hagemike, who is now represented by counsel, argues that the ALJ failed to adequately develop the administrative record in several respects: (1) her non-exertional impairments; (2) her knee problems; (3) the effects of her medication; and (4) failure to advise her that she could cross-examine the vocational expert. She also challenges the ALJ's disability determination arguing that the ALJ ignored the vocational expert's opinion[3] and failed to adequately consider her subjective pain complaints. I address the issues in order

___

[3] Although Hagemike characterizes her argument as the ALJ's failure to adequately develop the record by ignoring the vocational expert's testimony, she then discusses the medical evidence of her back problems apparently to support her claim of disability. Thus, I construe this part of her appeal to challenge the sufficiency of the evidence to support the ALJ's determination.

6

beginning with the adequacy of the administrative record.

## A.  <u>Adequacy of the Administrative Record</u>

Because Social Security proceedings are not adversarial, <u>see</u> <u>Currier v. Secretary of Health, Education, and Welfare</u>, 612 F.2d 594, 598 (1st Cir. 1980), the ALJ has a duty to develop a full and fair record on which to make a determination.  20 C.F.R. §§ 404.944, 416.1444 (1994); <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 997 (1st Cir. 1991).  Also, a claimant is entitled by the requirements of due process to a fair hearing including an opportunity for cross-examination.  <u>Tanner v. Secretary of Health and Human Servs.</u>, 932 F.2d 1110, 1112 (5th Cir. 1991); <u>see</u> <u>generally</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).

The ALJ's duty to develop the record increases in cases where the claimant is unrepresented, the claim appears to be substantial, and additional evidence is necessary to fill a gap in the record.[4]  <u>Heggarty</u>, 947 F.2d at 997 (quoting <u>Currier</u>, 612 F.2d at 598).  A remand is appropriate for a failure to develop the record if "'the court determines that further evidence is necessary to develop the facts of the case fully, that such

_____

[4]  Hagemike was informed and waived her statutory right to representation at the hearing, and does not claim that her waiver was invalid.

7

evidence is not cumulative, and that consideration of it is essential to a fair hearing.'" Id. (quoting Evangelista v. Secretary of Health and Human Services, 826 F.2d 136, 139 (1st Cir. 1987)). Thus, Hagemike must show both that the ALJ failed to discharge his duty to adequately develop the record and that she was prejudiced as a result. See, e.g., Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995); Bowling v. Shalala, 36 F.3d 431, 437 (5th Cir. 1994); Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993); Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980); Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980).

**1. Non-exertional impairments.**

Hagemike asserts that the ALJ failed to adequately develop the record as to her non-exertional impairments referring to psychological and pain impairments. Although Hagemike did not claim a psychological impairment at the hearing, on appeal her counsel points to testimony given by her husband, that she "just mopes around and doesn't do much at home," as sufficient indication of a psychological problem that the ALJ should have inquired further into the possibility of a psychological impairment. The only other reference in the record to a psychological issue is that Dr. Hepner suggested a psychological evaluation as part of a thorough battery of tests. The record

8

does not indicate whether the evaluation was ever done.

Even if Mr. Hagemike's remarks were sufficient to trigger the ALJ's duty to inquire into a psychological impairment, Hagemike has not explained the prejudice she has suffered as a result. In other words, to show that the ALJ's failure to inquire resulted in an unfair hearing, Hagemike must demonstrate what the ALJ would have learned from an adequate inquiry and what difference that would have made in the outcome. Remand for additional evidence is not appropriate when the claimant has failed to show that new material evidence exists and that consideration of the evidence is necessary to provide a fair hearing. See Heggarty, 947 F.2d at 997. Accordingly, Hagemike has not made the necessary showing to prevail on this issue.

Hagemike also argues that the ALJ did not adequately develop the record concerning her descriptions of pain. Again, she does not point out what the ALJ would have learned upon further questioning or what evidence was lacking that made the hearing unfair. Thus, her argument that the ALJ failed to develop an adequate record on this issue also must fail.

**2. Knee problems.**

Hagemike states that the ALJ failed to develop evidence with respect to her impairment due to her knees. She points to

9

medical evidence in the record that she was diagnosed and treated for a knee condition, patellofemoral syndrome, in November 1993, and that her doctor noted in December 1993 that the combination of knee and back problems was very problematic. On that basis, she argues that the ALJ should have, and did not, question her about limitations on her activities due to her knees.

During the hearing, Hagemike testified about her daily activities and the limitations on her activities caused by her claimed impairments. She mentioned that her knees used to interrupt her sleep and she showed knee pads that she used to wear for her knee condition. However, she did not describe pain or limitations on her activities caused by her knee condition at the time of the hearing. During the hearing the ALJ asked Hagemike and her husband if there were anything else about her condition or her capabilities that they felt was important, which gave them an opportunity to provide additional information. Again, at the close of the hearing, the ALJ asked Hagemike if "there is any else that you'd feel is important about your condition or your situation that we haven't covered this afternoon" and she answered, "No." Moreover, even if the ALJ should have inquired about the current state of her knee condition, Hagemike has again not explained what new information

10

would have been elicited or what difference new evidence might have made in the ALJ's decision. Consequently, I reject Hagemike's argument that the hearing was unfair for failure to further develop evidence of limitations based on her knee condition.

### 3. **Effects of medication.**

Hagemike argues that the ALJ should have inquired about the effects of her medication, specifically Ibuprofen. The hearing transcript reveals that the ALJ asked her about her medications and whether her symptoms were relieved by taking medication. She described what she took and the extent of relief provided. The transcript does not suggest that further inquiry was necessary and Hagemike has not identified any particular effects of medication that were not discussed. Because Hagemike presented no evidence of side effects from her medications, the ALJ was not obligated to inquire further. See Arroyo v. Secretary of Health and Human Servs., 932 F.2d 82, 89 (1st Cir. 1991).

### 4. **Cross examination of vocational expert.**

Hagemike's argument as to the final deficiency in the administrative record is that the ALJ did not advise her that she could cross-examine the vocational expert. A claimant has a right to examine witnesses appearing at a disability hearing. 20

11

C.F.R. § 404.929 (1994).  When a claimant has waived representation, the ALJ "should, as a matter of courtesy and fairness, ask an unrepresented claimant if he has any questions he wishes to ask of a witness."  Figueroa v. Secretary of Health, Education and Welfare, 585 F. 2d 551, 554 (1st Cir. 1978).  At the administrative hearing in this case, after the vocational expert gave his opinion, the ALJ asked Hagemike, "Is there anything that you would like to ask our Vocational Expert . . . ?"  She replied, "No."  Thus, the ALJ provided Hagemike with an opportunity to question the vocational expert and she declined. No more is required.

Having found no unfairness in the hearing based on Hagemike's allegations that the ALJ failed to adequately develop the administrative record, I turn to  Hagemike's claim concerning the vocational expert's opinion.

B.    **The Disability Determination**

The ALJ applied the five-step sequential evaluation process required for an initial disability determination.  20 C.F.R. §§ 404.1520, 416.920 (1994); Goodermote v. Secretary of Health & Human Servs, 690 F.2d 5, 6-7 (1st Cir. 1982).  He found that (1) Hagemike had not engaged in substantial gainful activity within the relevant period; (2) the medical evidence established that

12

she had severe failed back syndrome causing low back pain with radiating pain into her leg; (3) the impairment is not listed in or equivalent to an impairment described in Appendix 1, Subpart P, Regulations No. 4; (4) she was unable to perform her past relevant work as a hot tub facility worker; and (5) given her limitations, she could perform jobs such as food service (1,000,000 in the national economy), bench assembly (50,000 in the national economy), and self-service cashier (10,000 in the national economy).  Hagemike asserts that she is unable to work and, thus, Hagemike's appeal focuses on the fifth step of the sequential analysis.

At Step Five, the Commissioner has the burden of showing that despite the severity of the claimant's impairment and inability to return to past relevant work, she retains the RFC to perform other occupations that exist in significant numbers in the national economy and in the region where she lives.  20 C.F.R. § 404.1520(f); Keating v. Secretary of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988).  A claimant's residual functional capacity is "what [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a).

The ALJ presented two hypotheticals to the vocational expert.  The first described Hagemike's background, without a

high school diploma, and unskilled or semi-skilled work experience, with exertional activities limited to lifting a maximum of twenty pounds, and with limitations on standing, bending and walking. The vocational expert testified that Hagemike could not return to any of her previous work but could do some food preparation work requiring only light exertional levels. He also testified that in the range of sedentary jobs meeting the described restrictions that bench assembly jobs and sedentary self-service cashier positions existed in the relevant economy to meet the described activity level. When the ALJ added a restriction to allow the worker to lie down periodically during the day, the vocational expert testified that no jobs would allow that limitation. Hagemike accepts the RFC description posed by the ALJ to the vocational expert but contends that the ALJ erred by not crediting her pain allegations to require the rest periods incorporated into the second hypothetical.[5]

_____

[5] Because Hagemike does not challenge the underlying RFC allowing light work with some lifting and exertional restrictions, I need not address the adequacy of the RFC. Cf. 20 C.F.R. § 1527(f) (evidentiary weight of opinions from non-examining State agency medical consultants); Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995) (agency RFC forms that were not based on the full medical record could not constitute substantial evidence). Further, in this case, Hagemike described essentially the same pain limitations, back pain radiating into her legs with

14

Subjective complaints of pain are evaluated in light of all of the evidence and must be supported by medical signs and findings. 42 U.S.C.A. § 423(d)(5)(A) (West Supp. 1995); 20 C.F.R. §§ 404.1529(c), 416.929(b) (1994); Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986). In determining the weight to be given to allegations of pain, "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). If the ALJ has considered all relevant evidence of the claimant's pain, including both objective medical findings and detailed descriptions of the effect of pain on the claimant's daily activities, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

---

limited activity, at the time of the RFC assessment and at the hearing.

The ALJ questioned Hagemike and evaluated her complaints of pain in accordance with the regulatory requirements by asking about her daily activities, her functional restrictions, medications and other treatments or measures for relieving pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.919(c)(3); Avery, 797 F.2d at 28-29. The ALJ noted that beginning in 1986 and continuing until her laminectomy surgery, Hagemike complained of pain in her back and left leg but that she was able to continue working. Following surgery in November 1987, her doctor released her to light duty work with restrictions against lifting more than ten pounds and other continuous activities. By August 1988, Hagemike began to complain of intermittent lower back pain radiating into her left leg that was aggravated by prolonged standing. Nevertheless, her doctor allowed her to remain in her position in food preparation as long as she avoided heavy or constant bending or lifting.

Beginning in November 1992, after she had stopped working, Hagemike was again treated for back and left leg pain describing her leg pain as worse than the back pain. She was diagnosed with lumbar degenerative disc disease, and then failed back syndrome. She underwent spinal fusion surgery in June 1993. Despite her continued complaints of back and leg pain, the objective medical

16

findings over the next year indicated solid fusion of the affected vertebra levels, little or no spinal tenderness, no significant evidence of neurologic compromise, and return to pre-surgical trunk flexibility.  Nevertheless, at the hearing, a week and a half after the June medical exam, Hagemike testified that she felt worse since her spinal fusion surgery with more pain in her right leg than her back and could do very little because of her pain.

The ALJ concluded that Hagemike's complaints of totally disabling pain were not credible in light of all of the evidence in the record.  Credibility determinations and choices between competing evidence and inferences are appropriately left to the ALJ when he has evaluated the evidence in light of the appropriate factors.  Ortiz, 955 F.2d at 769; Frustaglia, 829 F.2d at 195.  I find no error in the ALJ's determination that Hagemike allegations of totally disabling pain were not credible and that she did not require rest periods as posited in the second hypothetical.  If the hypothetical posed to the vocational expert accurately reflects the claimant's abilities and limitations, the vocational expert's response constitutes substantial evidence to sustain the Commissioner's burden of proof at Step Five.  See Arocho v. Secretary of Health & Human

17

Servs., 670 F.2d 374 (1st Cir. 1982). Thus the record, including the vocational expert's opinion, provides substantial evidence in support of the ALJ's determination. I find no error and affirm the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, the motion to reverse (document no. 5) is denied and the motion to affirm (document no. 7) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

February 26, 1996

cc: Vickie Roundy, Esq.
    David Broderick, Esq.

18