Colby v. SSA                    CV-03-189-PB   7/27/04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Roger Colby, Jr.**

    **v.**                                    **Civil No. 03-189-PB**
                                         Opinion No. 2004 DNH 110

**Jo Anne Barnhart, Commissioner**
**of Social Security**



**MEMORANDUM AND ORDER**


Roger Colby filed this action seeking a reversal of the Social Security Commissioner's decision to deny him Supplemental Security Income benefits ("SSI"). He asserts, inter alia, that the administrative law judge ("ALJ") who heard his case improperly determined that there were a substantial number of jobs in the local economy that he could perform. For the reasons that follow, I agree, and remand this case to the Commissioner for further consideration consistent with this order.

# I. BACKGROUND[1]

## A. Factual Background

Colby worked as a truck driver but successive accidents in 1994, 1995, and 1997 left him with severe back pain that preventing him from being able to sit for long enough to continue in that job. At some point, he attempted to work as a self-employed carpenter, but stopped after roughly a month because of back pain. (Tr. 27, 121). He later bought a tow truck and tried to make a living as a tow truck operator, but he again had to stop due to pain. (Tr. 28-30).

The medical records supporting Colby's disability claim begin in 1996, with notations from an orthopaedic exam at the Matthews Orthopaedic Clinic. The notes reveal that Colby had tried a variety of treatments for his back ailment such as acupuncture and chiropractic therapy, and that he had been evaluated by a neurosurgeon. (Tr. 167). A CAT scan revealed a mild central herniated disc. (Id). An MRI after the first

---

[1] Unless otherwise noted, the background facts are taken from the Joint Statement of Material Facts (Doc. No. 11) submitted by the parties.

accident showed minor disc bulging.[2]  He reported significant lower back pain, but the examination revealed very few limitations on his range of motion, reflexes, and strength.  (Tr. 167).

The next note from an office visit in the record is from August 16, 1999, when Colby saw Dr. Moore for medication renewal. (Tr. at 141).  Colby reported that he was using his back brace four hours each day, walking a mile and a half each day, and taking three or four Percoset tablets daily.[3]  Dr. Moore renewed Colby's prescriptions for Percoset, Ambien, and Naprosyn.[4]  At his next office visit, on November 11, 1999, Colby reported that he had further injured his back while attempting to stack wood and had increased his Percocet usage to four tablets each day. He also stated that although he had received funding to enter a Spine Center Behavioral Treatment program, he could not attend because his wife worked full-time and their five children would

---

[2] The record does not contain this MRI or its exact results, but it is referred to in later physician's notations.

[3] Percocet is used to treat pain.  Physician's Desk Reference ("PDR") 1245 (58th ed. 2004).

[4] Ambien is used for short term treatment of insomnia; Naprosyn is used to treat arthritis.  PDR at 3006, 2902.

-3-

be alone if he were not home.  (Tr. 142).  Dr. Moore renewed Colby's Percocet and Naprosyn dosages, replaced Ambien with Sonata, and also prescribed Monopril.[5]

Dr. Moore saw Colby again on February 1, 2000.  Colby reported that his back pain was still severe, requiring at least three Percocet tablets each day.  At the next visit to a medical provider, on May 15, 2000, Colby's lower back problems seemed worse.  He was moving slowly and had less mobility.  Furthermore, in an effort to regain his employment as a truck driver, Colby had stopped taking all narcotics, including Percocet.

On January 2, 2001, Colby saw Dr. Moore, and reported that he had experienced greater back pain since working.  His mobility also had decreased and he had back spasms.  Dr. Moore told Colby not to work for ten days, and prescribed Flexiril and Percocet.[6] On August 6, 2001, Dr. Schell noted that Colby had re-injured his back.  He had been off Percocet since the 10-day prescription

---

[5] Sonata is used for short term treatment of insomnia.  PDR at 2181.  Monopril is used for the treatment of hypertension. PDR online, at http://www.pdrhealth.com/drug_info/rxdrugprofiles/ drugs/mon1274.shtml

[6] Flexeril is used to relieve muscle spasms.  PDR at 1984.

from January had run out.[7]  Colby had tenderness and muscle spasms in his lumbar spine and limited range of motion.  Dr. Schell prescribed more Percocet, Flexeril, and Naprosyn.

On September 13, 2001, Dr. Moore noted that Colby reported having acute pain when he adjusted retaining straps and picked up his tool box while working.  Dr. Moore described Colby's pain as centered in the low lumbar spine area and radiating equally laterally to the level of sacroiliac joints.[8]  Dr. Moore stated that Colby had difficulty entering a car, could not walk or climb for long periods, had to limit sitting to one hour, riding in a car to two hours, and preferred being able to adjust his position from seated to supine at will for pain relief.  He did not limp, but his gait was abnormal.  On examination, Colby had some low lumbar paraspinal muscle spasm and was tender over some vertebral processes.  Dr. Moore concluded that Colby had a mild

---

[7]  Colby had voluntarily stopped taking narcotics for pain relief in an attempt to regain employment as a truck driver and had purchased a tow truck in furtherance of that goal.

[8]  The sacroiliac joint lies next to the spine and connects the bottom of the spine to the pelvis.

radiculopathy,[9] but there were no confirming physical findings. He prescribed Ambien and Oxycodone,[10] and recommended that Colby have an expert occupational and rehabilitation evaluation, rehabilitation therapy and vocational training.

Colby's next visit to Dr. Moore was on July 2, 2002. He moved slowly, and had marked tenderness in the his lower back, pelvis, and buttocks. Dr. Moore found that Colby's mobility was reduced, but that his toes and ankles had normal power. He concluded that Colby was "functionally incapacitated," and could not "sit, walk, or drive for more than a few minutes at a time." (Tr. 161).

Colby's last visit to Dr. Moore was on September 13, 2001. After that visit, Moore noted that Colby "prefer[ed] to take short, frequent walks, change sitting and lying positions. He [could] tolerate sitting for over an hour, [could] ride in a car or truck cab for perhaps two hours. Prolonged walking or climbing and even bedrest [were] uncomfortable." (Tr. 149).

---

[9] Radiculopathy is a disorder of the spinal nerve roots. Stedman's Medical Dictionary (Seedman's) 1503 (27th ed. 2000).

[10] Oxycodone is used for pain management. PDR at 2296.

Dr. Moore completed a Medical Source Statement of Ability to Do Work Related Activities (Physical) on August 23, 2002. He stated that Colby could lift less than ten pounds occasionally, stand/walk for at least two hours in an eight hour day, and needed to periodically alternate between sitting and standing. He also determined that Colby had limited ability to push, crawl, kneel, reach, and should never climb, crouch, stoop or be around hazards.

Dr. Cataldo, a non-treating physician, reviewed Colby's records and determined that Colby could lift ten pounds frequently, and twenty pounds occasionally, and could sit, stand, and walk for six hours in an eight-hour day. He noted that Colby occasionally had postural limitations.

## B. Procedural History

Roger Colby first filed for SSI on August 24, 1999. His claim was denied and he did not appeal, instead attempting to work as a self-employed carpenter. He refiled for SSI on September 13, 2001. His claim was denied, and he requested review by an ALJ. Colby's ALJ hearing was held on October 2, 2002. He testified that he could read and write fairly well, although he had dropped out of school in the seventh grade.

Regarding his physical condition, Colby said that he couldn't bring his fingers below his knees, that he couldn't drive trucks anymore because sitting in one position for too long caused pain in his lower back, buttocks legs and calves. His feet sometimes became numb and he occasionally blacked out from pain.

A vocational expert ("VE") testified at the hearing. The VE stated that Colby's previous work as a carpenter and truck driver were skilled labor, but that he could not continue to perform those jobs because of his strength limitations. (Tr. 39-40). She categorized Dr. Moore's assessment of Colby's capabilities as enabling him to perform "less than sedentary work."[11] She characterized Dr. Cataldo's assessment as enabling "light work." She further explained that all of Colby's previous work was classed as "medium," and that he therefore could not return to any of his previous work. She then testified that if Dr. Moore's assessment was interpreted to mean that Colby had to be able to change his position from sitting to standing or supine at will, there would be no work for someone with his capabilities and restrictions in the local or national economy. However, if he

---

[11] Sedentary work requires an ability to lift no more than 10 pounds at a time.

only needed to alternate between sitting and standing on an hourly basis, there would be work available for him in the local and national economy. Specifically, he could perform most sedentary and some light work with modifications, and identified desk-based security guard, gate guard, or a cashier as light work that could be performed at a sedentary level. She stated that even though security work and cashier were classified as light work, in her experience they were really sedentary and could be performed by someone with the limitations identified by Dr. Moore. The modifications, she explained, would mean that not all security and cashier jobs listed as available would actually be appropriate, as he would only be eligible for those jobs that could be modified to his physical abilities. Based on her experience, she reduced the number of jobs for each type of work by one half to one third to account for those jobs that could not be modified.

The ALJ asked her if there were sedentary jobs in the local economy, and the VE replied "printed circuit board assembler. In the United States economy, 39,000 jobs. In our local economy, approximately 400. Table worker. In the United States economy, 39,000 jobs. And in our local economy, approximately 340. Final

-9-

assembler, in the United States economy – this is sedentary as well – 158,000 jobs.  And in our local economy, approximately 900."  (Tr. 40-41).  Again, based on her experience, she testified that if the lifting less than ten pounds limitation were added, all of these jobs numbers would be reduced by one half.

The ALJ issued his decision on November 27, 2002.  He denied Colby's application for SSI because he concluded that there were substantial jobs in the local economy that Colby could perform.  He found that Colby had a severe disability of the back that did not meet or equal any of the SSA's listed impairments.  He stated that Colby had the following residual functional capacity ("RFC"):

> lift and/or carry les[s] than ten pounds.  He is able
> to sit for up to six hours and stand and walk for up to
> two hours.  He needs to have the ability to change his
> position on an hourly basis to alternate between
> sitting and standing with a limited ability for pushing
> and pulling in his lower extremities or pushing of
> trolley.  He has limitations on bending, climbing,
> stooping, crouching, kneeling and crawling.  Also, the
> claimant is limited in his ability to work around
> hazards.

(Tr. 19).  According to the ALJ, these capabilities allowed Colby to perform "a significant range of sedentary work (20 C.F.R. §

416.967)." (Tr. 19). Based on the testimony of the vocational expert, the ALJ concluded that there were substantial jobs in the local economy that Colby could perform, and therefore he was not entitled to benefits. He issued his decision on November 27, 2002. On March 2, 2003, the Appeals Council denied Colby's request for a reversal, and this action ensued.

## II. STANDARD OF REVIEW

After a final determination by the Commissioner denying a claimant's application for benefits, and upon a timely request by the claimant, I am authorized to review the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the ALJ's decision. 42 U.S.C. § 405(g) (2003). My review is limited in scope, however, as the ALJ's factual findings are conclusive if they are supported by substantial evidence. Id.; see Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). The ALJ is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. See Ortiz, 955 F.2d at 769. Therefore, I must "'uphold the [ALJ's] findings . . . if a

-11-

reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion.'" Id. (quoting Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). I apply these standards in reviewing Colby's case on appeal.

## III. DISCUSSION

The Social Security Act defines "disability" for the purposes of Title II as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2003). When evaluating whether a claimant is disabled due to a physical or mental impairment, an ALJ's analysis is governed by a five-step sequential evaluation process. See 20 C.F.R. § 404.1520 (2003). The ALJ is required to consider the following issues when determining if a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the impairment prevents or prevented the claimant from performing past relevant work; and (5) whether the impairment prevents or prevented the claimant from doing any other work. 20 C.F.R. § 404.1520 (2003). An affirmative answer at one step leads to the next step in the analysis. Id. If the answer to question (3) or (5) is affirmative, the claimant is disabled. Id. If the answer to any question other than (3) is negative, the claimant is not disabled. Id. The claimant bears the burden on the first four steps. At step five, the burden shifts to the Commissioner to show "that there are jobs in the national economy that [the] claimant can perform." 20 C.F.R. § 416.920(f) (2003); Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991) (per curiam); see also Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) (per curiam). The Commissioner must show that the claimant's limitations do not prevent him from engaging in substantial gainful work, but need not show that the claimant could actually find a job. See Keating, 848 F.2d at 276.

In this case, the ALJ determined that Colby was not entitled to benefits at step 5, when he found that Colby's residual functional capacity allowed him to perform such jobs as "printer

board assembler, a table worker, a final assembler, a gate guard and a cashier." (Tr. 19). Colby argues that (1) that the ALJ's RFC finding is not supported by substantial evidence; (2) the VE's testimony was unreliable; (3) the ALJ failed to fully develop the record; and (4) the ALJ's credibility determinations are not supported by substantial evidence.

Here, the ALJ's RFC finding is supported by substantial evidence. The ALJ found that Colby could lift or carry less than ten pounds frequently, sit for up to six hours, and stand and walk for up to two hours, provided that he could alternate between sitting and standing on an hourly basis, and that he had limitations of pushing and pulling in lower extremities or pushing a trolley. Lastly, he found that Colby had limitations on stooping, bending, climbing, crouching, kneeling and crawling, and could not be around hazards. (Tr. 16). In support of these findings, the ALJ cited Dr. Moore's notations regarding the activities Colby engaged in, which at various times included stacking wood, caring for his children, and walking a mile and a half each day. He also noted that although Colby reported taking three to four Percocet each day, he had voluntarily stopped taking narcotic pain medication altogether in an attempt to

-14-

perform work as a truck driver in 2002. I note also that Dr. Moore, Colby's treating physician, stated that Colby could sit for over an hour, and ride in a car or truck for "perhaps two hours," although he preferred to be able to take short, frequent walks and change his position between standing, sitting and lying down. (Tr. 149). When asked to recount his daily activities, Colby noted that Dr. Moore had limited his lifting to 5 pounds, that he could not put on his own socks and shoes, that he lies down most of the day, and that his wife does all errands and chores. (Tr. 114-18). This, coupled with Dr. Moore's Medical Source Statement, supports the ALJ's RFC findings, because the RFC incorporates the limitations noted by Dr. Moore and Colby himself, i.e., that he must be able to change positions, that he has limitations on bending, stooping, etc. I therefore conclude that the RFC finding was supported by substantial evidence.

Colby next asserts that the VE's testimony was unreliable because she did not adequately explain the discrepancies between her testimony and the Dictionary of Occupations Titles ("DOT"). The Commissioner agrees that the VE's testimony concerning the availability of table worker, gate guard and printer board assembler jobs is irrelevant because these jobs do not qualify as

sedentary, the only type of work that Colby could perform.  He nevertheless argues that the ALJ appropriately rejected Colby's claim because he could perform both light cashier and final assembler jobs, both of which are available in significant numbers.

The record does not support the ALJ's conclusion that he is capable of working as a light cashier (DOT #211.462-010). Although the VE testified that the job of light cashier could be performed at a sedentary level, the ALJ is not allowed to use VE testimony to reclassify a job's strength level without providing an explanation.  See Social Security Ruling (SSR) 00-04p, Colby v. Barnhart, 2004 DNH 37-M, 2004 U.S. Dist. LEXIS 2830 (D.N.H. 2004).  If there is a conflict between VE testimony and the DOT classifications for jobs, the ALJ must ask the VE to explain the conflict and state how it was resolved on the record.  Here, the VE explained the conflict between the light classification of cashier and the limitations provided by Dr. Moore by stating "[m]any of the job settings in the light where people typically often work would be, you know, for example, in a convenience store, in there you do have to do some restocking.  So, I think it is appropriate to reduce those numbers because it would be --

you would need to screen out the environment where there was the lifting would be within the less than 10 pounds [sic]." (Tr. 46). The VE's statement that an unspecified number of light cashier jobs could qualify as sedentary is insufficient to overcome the classification of the job in the DOT. SSR 00-04p ("the regulatory definitions of exertional levels are controlling"); Colby, 2004 DNH 37. I therefore conclude that the VE's testimony does not support a finding that Colby could perform the job of light cashier.[12]

The other job title offered by the Commissioner is final assembler. The VE did not provide any guidance as to whether she meant final assembler (optical goods) (DOT # 713.687-018), final assembler (office machines) (DOT # 706.381-018) or final assembler (garment) (DOT # 789.687-046). Only final assembler (optical goods) is classed as sedentary unskilled work, for which Colby would be eligible. At the hearing, the VE testified that there were 900 final assembler positions in the region, but she would reduce that number to 450 to take into account Colby's need to change positions hourly. (Tr. 41-42, 49). However, the VE

---

[12] The DOT lists another cashier job, but it not unskilled labor, and he is therefore ineligible for it on that ground.

did not clearly indicate whether she was aware that only optical goods final assembler jobs are classed as sedentary. Thus, I cannot determine from the record whether the number of jobs that she claimed were available in this category were all optical goods assembler jobs. Accordingly, the ALJ's ruling cannot stand because it was based on inaccurate and unreliable VE testimony.

## IV. CONCLUSION

For the reasons described above, I remand this case to the Commissioner for reconsideration of whether there are a significant number of jobs available that Colby can perform consistent with his RFC. Colby's motion to reverse (Doc. No. 9) is granted in part and denied in part. To the extent he seeks reversal, it is denied. To the extent he seeks remand, it is granted in accordance with the decision explained above.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

July 27, 2004

cc:  Dennis G. Bezanson, Esq.
     David L. Broderick, Esq.
     Francis M. Jackson, Esq.

-18-